UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

In re                   :         Chapter 11

NORTHWEST AIRLINES CORPORATION,  :    Case No. 05-17930 (ALG)
et al.,                 :

                 :        (Jointly Administered)

         Debtors.    :

------------------------------------------------------- x

LAZARD FRÈRES & CO., LLC,    :

                 :      District Court

         Appellant,  :

v.                  :      Case No. 08-CV-03456 (NRB)

DIANA G. ADAMS, United States Trustee;  :
CARVAL INVESTORS, LLC; and    :
ASSOCIATION OF FLIGHT ATTENDANTS –  :
CWA, AFL-CIO,          :

         Appellees.  :

------------------------------------------------------- x

OFFICIAL COMMITTEE OF UNSECURED  :
CREDITORS OF NORTHWEST AIRLINES  :
CORPORATION,          :

                 :      District Court

         Appellant,  :

                 :      Case No. 08-CV-03500 (NRB)

v.                  :

DIANA G. ADAMS, United States Trustee;  :
CARVAL INVESTORS, LLC; and    :
ASSOCIATION OF FLIGHT ATTENDANTS –  :
CWA, AFL-CIO,          :

         Appellees.  :

------------------------------------------------------- x

**JOINT BRIEF IN SUPPORT OF APPEALS FROM
DECISION OF THE BANKRUPTCY COURT DENYING
COMPLETION FEE PORTION OF FINAL FEE APPLICATION**

Alan W. Kornberg (*akornberg@paulweiss.com*)
Philip G. Barber (*pbarber@paulweiss.com*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York  10019-6064
Telephone: (212) 373-3000
Telecopier: (212) 757-3990

*Attorneys for Appellant Lazard Frères & Co., LLC,
Financial Advisor to the Official Committee of
Unsecured Creditors*

Scott L. Hazen (*shazen@oshr.com*)
John Bougiamas (*jbougiamas@oshr.com*)
OTTERBOURG, STEINDLER, HOUSTON &
ROSEN, P.C.
230 Park Avenue
New York, New York 10169
Telephone: (212) 661-9100
Telecopier: (212) 682-6104

*Attorneys for Appellant Official Committee of
Unsecured Creditors*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... ii

BASIS OF APPELLATE JURISDICTION ..................................................... 1

ISSUE PRESENTED ON APPEAL ............................................................... 1

STANDARD OF APPELLATE REVIEW ........................................................ 1

STATEMENT OF THE CASE .................................................................... 1

ARGUMENT ......................................................................................... 11

I.  THE BANKRUPTCY COURT COMMITTED CLEAR ERROR IN  FAILING
TO CORRECTLY APPLY SECTION 330 OF THE  BANKRUPTCY CODE ............. 11

    A.    The Bankruptcy Court Erred In Finding The Market-Driven
        Approach Inapplicable ................................................................ 13

        1.    The Bankruptcy Court Erred By Improperly Distinguishing
             The *Howard* Case ........................................................ 15

        2.    The Undisputed Evidence Shows That Lazard's
             Completion Fee Is Reasonable Under The Market-Based
             Approach ...................................................................... 16

    B.    Lazard Conferred A Substantial Benefit On The Debtors' Estates .......... 18

    C.    Lazard Exhibited Substantial Skill And Expertise ................................. 20

    D.    The "Lodestar" Approach to Reasonableness Is Not Applicable
        Here ........................................................................................ 21

II.  THE BANKRUPTCY COURT'S DECISION FRUSTRATES
BANKRUPTCY CODE POLICY ................................................................. 22

CONCLUSION ....................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Ames Dep't Stores, Inc.*,
   76 F.3d 66 (2d Cir. 1996) .................................................................. 12, 15, 19

*In re Angelika Films 57th, Inc.*,
   227 B.R. 29 (Bankr. S.D.N.Y. 1998) ................................................... 19

*In re Bennett Funding Group, Inc.*,
   213 B.R. 234 (Bankr. N.D.N.Y. 1997) ................................................ 13

*In re Busy Beaver Bldg. Ctrs., Inc.*,
   19 F.3d 833 (3d Cir. 1994) ................................................................. 13, 17

*In re Cenargo Int'l, PLC*,
   294 B.R. 571 (Bankr. S.D.N.Y. 2003) ................................................ 12

*In re Drexel Burnham Lambert Group, Inc.*,
   133 B.R. 13 (Bankr. S.D.N.Y. 1991) .................................................. 13

*In re EWI, Inc.*,
   208 B.R. 885 (Bankr. N.D. Ohio 1997) ............................................... 22

*Howard v. High River Ltd. P'Ship*,
   369 B.R. 111 (S.D.N.Y. 2007) ........................................................... 13, 15, 22

*In the Matter of Cont'l Illinois Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) ............................................................. 17

*In re Insilco Tech., Inc.*,
   291 B.R. 628 (Bankr. D. Del. 2003) ................................................... 13

*In re Intelogic Trace, Inc.*,
   188 B.R. 557 (Bankr. W.D. Tex. 1995) ............................................... 14

*Kovalesky v. Carpenter*,
   No. 95 Civ. 3700, 1997 WL 666299 (S.D.N.Y. Oct. 23, 1997) ............ 19

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) ........................................................................... 1

*In re UDC Homes, Inc.*,
   203 B.R. 218 (Bankr. D. Del. 1996) ................................................... 14, 16

*In re United Artists Theatre Co.*,
   315 F.3d 217 (3d Cir. 2003) ............................................................... 13

*In re UNR Indus., Inc.,*
    986 F.2d 207 (7th Cir. 1993) .................................................................. 17

*In re XO Commc'ns, Inc.,*
    323 B.R. 330 (Bankr. S.D.N.Y. 2005) .................................................. 18

*Zolfo, Cooper & Co.* v. *Sunbeam-Oster Co., Inc.,*
    50 F.3d 253 (3d Cir. 1995) .................................................................. 13

## STATUTES

11 U.S.C. § 330(a) ........................................................................... *passim*

11 U.S.C. § 1102(a)(1) ............................................................................. 4

28 U.S.C. § 158(a)(1) ............................................................................... 1

Fed. R. Bankr. P. 8001(a) ........................................................................ 1

Fed. R. Bankr. P. 8013 ............................................................................. 1

## OTHER AUTHORITIES

124 Cong. Rec. § 17,406 (daily ed. Oct. 6, 1978) ............................... 18

H.R. Rep. No. 95-595 (1977) .............................................................. 18

James W. Giddens, *Compensation of Investment Bankers in Bankruptcy
    Proceedings: Just or Unjust Enrichment?,* 23 ANN. REV. BANKING & FIN.
    L. 485, 493 (2004) .......................................................................... 18

TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT
OF NEW YORK:

Appellants, Lazard Frères & Co., LLC ("Lazard"), financial advisor to the

Official Committee of Unsecured Creditors of Northwest Airlines Corp.

(the "Committee") and the Committee submit this brief in support of their appeals of the

decision and order (the "Bankruptcy Court Decision") entered by the United States

Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on

February 29, 2008 denying the completion fee portion of Lazard's final fee application.

## BASIS OF APPELLATE JURISDICTION

Lazard and the Committee each timely filed a notice of appeal of the

Bankruptcy Court Decision on March 10, 2008. This Court has jurisdiction over this

appeal pursuant to 28 U.S.C. § 158(a)(1) and Fed. R. Bankr. P. 8001(a).

## ISSUE PRESENTED ON APPEAL

Whether the Bankruptcy Court erred in holding that the completion fee

requested by Lazard was not reasonable under section 330 of the Bankruptcy Code,

11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

## STANDARD OF APPELLATE REVIEW

The Bankruptcy Court's rulings and conclusions of law are subject to *de

novo* review on appeal. Its findings of fact are reviewed for clear error. *See* Fed. R.

Bankr. P. 8013. The Bankruptcy Court's exercise of discretion is reviewed for abuse of

discretion. *See Piper Aircraft Co.* v. *Reyno,* 454 U.S. 235, 257 (1981).

## STATEMENT OF THE CASE

This appeal arises out of Lazard's final application for compensation as

financial advisor to the Committee in the *Northwest Airlines* chapter 11 cases. Lazard's

1

court-approved engagement provided for the payment of a fixed monthly fee and a to-be-determined completion fee to be set at the latter part of the cases when the Committee could better assess Lazard's contribution to the cases, as well as the extent of creditor recoveries.

When such time came, after arms-length negotiations with Lazard, both the Committee and the Debtors determined that a completion fee in the amount of $3,250,000 was appropriate. Lazard's compensation, including its completion fee, was entirely consistent with market norms for similarly complex and sophisticated services both in and outside of bankruptcy. Furthermore, not a single party in these cases ever once challenged the quality or sophistication of Lazard's work. Nonetheless, three parties, out of the thousands involved in the *Northwest* chapter 11 cases, objected to Lazard's completion fee request, and the Bankruptcy Court denied that component of Lazard's fee application.

Although the Bankruptcy Court properly concluded that Lazard was entitled to seek payment of a completion fee under section 330 of the Bankruptcy Code, it clearly erred in its application of that statutory provision. Instead of applying the applicable criteria explicitly set forth in section 330, the Bankruptcy Court formulated a heightened standard, never before employed by any court in any Circuit, to evaluate the reasonableness of Lazard's fee. Furthermore, the Bankruptcy Court ignored the Second Circuit's market-based approach to reasonableness, and therefore disregarded the evidence presented by Lazard which demonstrated that its total compensation was well within market.

The Bankruptcy Court also failed to follow Second Circuit precedent that

2

a professional's services are considered beneficial to a reorganization where they are "reasonably likely to benefit the debtor's estate." Instead, the Bankruptcy Court required that Lazard somehow prove that the Debtors' successful reorganization was *solely* a result of Lazard's work.

By creating such impossible standards, the Bankruptcy Court effectively held that a completion fee can never be allowed unless it has been pre-approved under section 328 of the Bankruptcy Code. Such a "get-it-up-front-or-don't-get-it-at-all" approach to compensation would dissuade financial advisors from agreeing to defer consideration of their completion fee until the outcome of a case or creditor recoveries become known. From a policy standpoint, this would establish an unfortunate precedent: financial advisors would be forced to demand a completion fee upon retention rather than relying on debtors or committees to assess their performance fairly at the end of a reorganization. Moreover, the Bankruptcy Court Decision frustrates the Bankruptcy Code's goal of adequately compensating restructuring professionals to incentivize highly skilled professionals to accept bankruptcy engagements.

Accordingly, because the Bankruptcy Court clearly erred in its application of the law, and because Lazard's request for a completion fee meets the requirements of section 330 of the Bankruptcy Code, Lazard and the Committee respectfully request that this Court reverse the Bankruptcy Court Decision and approve Lazard's application for a completion fee.

## STATEMENT OF FACTS

### Northwest Airlines' Chapter 11 Cases

On September 14, 2005, Northwest Airlines Corporation and certain affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11

3

of the Bankruptcy Code in the Bankruptcy Court. (Lazard's Final Application for Allowance of Compensation and for Reimbursement of Expenses for Services Rendered in These Cases for the Period October 6, 2005 Through May 31, 2007 (the "Final Fee Application") ¶ 2 (Docket No. 7431).) The Debtors continued to operate their businesses and manage their properties and assets as debtors in possession. (*Id.*) On September 30, 2005, the United States Trustee appointed the nine-member Committee pursuant to section 1102(a)(1) of the Bankruptcy Code. (*Id.* at ¶ 5.) On September 30, 2005, the Committee selected Airbus North America Holdings, Inc., represented by R. Douglas Greco, Esq., as its Chairperson. (*Id.*) In February 2006, Dana J. Lockhart, Mr. Greco's superior at Airbus, replaced Mr. Greco as Chairperson. (Deposition Transcript of Dana J. Lockhart 9:13-21 (Docket No. 7913, Exhibit D).) On October 6, 2005, the Committee selected Lazard as its financial advisor. (Final Fee Application ¶ 6.)[1]

**Lazard's Retention**

Lazard's retention was approved by the Bankruptcy Court by its Final Order Authorizing the Employment and Retention of Lazard Frères & Co., LLC as Financial Advisor to the Official Committee of Unsecured Creditors, dated July 21, 2006 (the "Retention Order") (Docket No. 3112). The Retention Order approved the terms of Lazard's engagement letter with the Committee. (*Id.*) Such engagement letter provided for, among other terms: (i) a fixed monthly advisory fee, (ii) expense reimbursement, and (iii) a possible completion fee. (Declaration of David S. Kurtz (the "Kurtz

---

[1]    By Order dated May 18, 2008 (Docket No. 6944), the Bankruptcy Court confirmed the Debtors' Plan of Reorganization, which became effective May 31, 2008 (Docket No. 5740). In accordance with Section 14.2 of the Plan, the Committee was dissolved and its members, professionals and agents were released from any further duties and responsibilities in the Chapter 11 case and under the Bankruptcy Code except with respect to certain matters including applications for professional claims. Pursuant to Section 14.2 of the Plan, a post Effective Date Committee was established with limited authority to oversee certain actions of the Reorganized Debtors.

4

Declaration") (Docket No. 7586, Exhibit A); Hearing Tr. (Testimony of David S. Kurtz)
23:4-11.) Specifically, the engagement letter provided that "all matters relating to
Lazard's entitlement, if any, to an additional 'success' or 'completion' fee shall be
deferred until the latter part of the Company's chapter 11 case . . . ." (*Id.*) Expansive
notice of the terms of Lazard's engagement was served on all parties in interest. (*See*
Application to Employ And Retain Lazard Frères & Co. LLC As Financial Advisor To
The Official Committee Of Unsecured Creditors, November 8, 2005 ¶ 41 (Docket No.
948).) No objections were raised, not even by the Appellees here. Accordingly, the
Bankruptcy Court approved Lazard's retention on these terms. (*See* Retention Order.)

       This type of compensation arrangement, consisting of a fixed monthly fee
and a completion fee at the end of the engagement, is customary practice for
compensating an investment banker like Lazard. (Hearing Tr. (Kurtz) 14:16-22.) Unlike
attorneys, Lazard is never retained on an hourly rate structure, and its professionals are
not assigned hourly rates. (Hearing Tr. (Kurtz) 14:23-25; 40:16-19.) To ensure fair
compensation for its efforts, prior to accepting an engagement, Lazard makes a business
judgment and evaluates the compensation to be earned in connection with such
engagement against the business that it would be precluded from accepting as a result.
(Hearing Tr. 40:21-23; 121:5-20.)

**Lazard's Services**

       The Debtors operate the world's fourth largest airline, with approximately
39,000 employees and operating revenues of approximately $11,279,000,000. (Lazard
Final Application ¶ 4.) Lazard was retained by the Committee to perform "general
financial advisory services with a heavy emphasis on those that required investment
banking expertise." (Hearing Tr. (Kurtz) 15:12-17; *see also* Lockhart Depos. Tr. 70:4-

16.) Lazard is both an airline industry expert and a restructuring expert (Hearing Tr. (Kurtz) 13:21-14:11), and thus was uniquely qualified to work for the Committee. (*Id.*; Lockhart Depos. Tr. 70:17-71:10.)

As financial advisor to the Committee, Lazard attended every Committee meeting and advised the Committee on each and every issue that was put before it. (Hearing Tr. (Kurtz) 15:22-16:1.)  Lazard's primary task was advising the Committee with regard to the creation of the capital structure that the Debtors would utilize to emerge from bankruptcy. (Hearing Tr. (Kurtz) 16:23-17:1.)  This resulted in Lazard playing a key role in working directly with the Debtors themselves. (Hearing Tr. (Kurtz) 17:22-18:19; 22:1-8.)  Given Lazard's wealth of experience in the airline industry, the Debtors welcomed Lazard's expertise. (Hearing Tr. (Kurtz) 18:12-15.)

More specifically, Lazard evaluated the Debtors' restructuring initiatives, and in certain respects, helped to develop the Debtors' strategy with respect to critical aspects of their reorganization, including:

- Fleet restructuring:  Lazard's airline group possessed an extensive understanding of the operational and financial dynamics of the various aircraft comprising the Debtors' fleet.  Such expertise was essential to evaluation of Debtors' network optimization program and the rationale behind fleet initiatives.  In addition, Lazard analyzed capacity and related critical operating statistics, and benchmarked proposed restructured terms to market and precedent transactions. *See* Kurtz Declaration ¶ 21.

- Financing arrangements:  Lazard identified, evaluated, and analyzed financing opportunities available with respect to fleet arrangements as well as emergence debt and equity capitalization and debt capacity implications, and optimal execution process and timing considerations. (Hearing Tr. (Kurtz) 16:23-17:14.)

- Business plan developments and revisions:  Lazard utilized its industry expertise to provide a critical analysis of the Debtors' various business plan iterations based upon the comprehensive review and diligence of

6

underlying projections, including detailed industry operating, labor and fuel benchmarking. (Hearing Tr. (Kurtz) 19:10-21.)

- <u>Industry consolidation risks and opportunities</u>: Lazard participated in the development of the Debtors' strategy related to, and performed a lead role in advising the Committee on, industry consolidation activity, including independent assessment of various parties' competing considerations, and merger options. (Hearing Tr. (Kurtz) 20:19-22:8.)

- <u>Rights offering</u>: Lazard utilized its capital markets expertise to participate in the design and implementation of the Debtors' successful equity rights offering (which raised $750 million for the Debtors at attractive pricing), monitored negotiations with third parties and resolution of underlying issues, and sensitized valuation implications and pricing considerations. (Hearing Tr. (Kurtz) 17:15-18:19.)

- <u>Valuation exercises</u>:  Lazard performed independent valuation analyses including discounted cash flow and comparable company valuations based on multiples relative to publicly traded industry peers, addressed potential mergers, and prepared for potential litigation with certain equity holders which was ultimately settled on extremely attractive terms. (Hearing Tr. (Kurtz) 19:22-20:3.)

**Determination of Lazard's Completion Fee**

Under Lazard's engagement, the determination as to whether it would be entitled to a completion fee, and how much, was to be deferred until the "latter part" of the chapter 11 cases.  Approximately fourteen months into the cases, Lazard believed that the reorganization was far enough along to raise the issue of a completion fee with the Committee. (Hearing Tr. (Kurtz) 30:14-22.)  The Committee asked Lazard to propose a fee. (Hearing Tr. (Kurtz) 31:12-17.)  Lazard, which sought a market fee for its services, collected relevant data to determine a customary fee for financial advisors performing Lazard's role in similarly complex cases. (Hearing Tr. (Kurtz) 31:14-19.)  Lazard prepared a benchmarking analysis of fees paid to firms that acted as financial advisor to creditors' committees in comparable restructuring cases and presented such analysis to the Committee. (Hearing Tr. (Kurtz) 33:9-20.)  Using this analysis, Lazard proposed a

7

completion fee of $4 million, which was in the median range of comparable fees. (Hearing Tr. (Kurtz) 33:21-34:2.) Upon further consideration, however, the Committee believed that it was still too early in the case to establish the amount of Lazard's completion fee, and it wished to defer such determination until later in the case. (Hearing Tr. (Kurtz) 34:12-19.)

A few months later, in May 2007, after the plan of reorganization was confirmed, the Committee determined it was the appropriate time to evaluate Lazard's $4 million completion fee request. (Hearing Tr. (Kurtz) 34:3-22.) The Committee was composed of sophisticated institutions, including two unions, two banks and major corporations, who have served on other creditors' committees, had experience in determining fees for financial advisors and knowledge of market rates for such fees.[2] (Lockhart Depos. Tr. 79:4-12.) In particular, Mr. Lockhart, the Committee Chairperson, had served on creditors' committees in six other airline industry chapter 11 cases, including two as chair. (Lockhart Depos. Tr. 7:13-8:19.) Based on the Committee's knowledge and experience, and a review of Lazard's benchmarking analysis of comparable cases, the Committee determined that the $4 million fee was "reasonable and appropriate and that the committee would support it." (Lockhart Depos. Tr. 79:5-12.)

Subsequent to Committee approval of the $4 million completion fee, but prior to Lazard submitting a request therefor to the Bankruptcy Court, Lazard had a series of conversations with the Debtors with respect to the amount of the fee. (Hearing Tr.

---

[2]   Specifically, the Committee included the following organizations:  Pension Benefit Guarantee Corporation, HSBC Bank USA, National Association as Indenture Trustee, AVSA, S.A.R.L., Bombardier, Inc., Air Line Pilots Association, International, International Association of Machinists and Aerospace Workers AFL-CIO, General Electric Company, Sky Chefs, Inc., U.S. Bank National Association, as Indenture Trustee.  *See* Appointment of Official Creditors' Committee of Unsecured Creditors (Docket No. 444).

(Kurtz) 35:16-24.)  Lazard provided the Debtors with the same benchmarking analysis of comparable cases that it provided to the Committee so the Debtors could evaluate whether the proposed fee was reasonable.  (Hearing Tr. (Kurtz) 36:1-6.)  After negotiations with the Debtors, it was agreed that Lazard would reduce its request by $750,000 to $3,250,000.  (Hearing Tr. (Kurtz) 36:7-12.)

**Fees Earned In Comparable Cases**

There are two recent chapter 11 cases — *Delta Airlines* and *United Airlines* — in which the compensation paid to financial advisors is particularly relevant to the *Northwest Airlines* cases.  (Lockhart Depos. Tr. 80:15-81:24; Hearing Tr. (Kurtz) 24:7-19.)  Delta Airlines filed for chapter 11 relief in the same court and on the same day as the Debtors.  (Hearing Tr. (Kurtz) 20:24-25.)  The Official Creditors' Committee in *Delta* hired Houlihan Lokey as its financial advisor, and Houlihan received total compensation of $8,600,000, approximately $3,000,000 more than the fee approved by the Bankruptcy Court here, of which $5,000,000 was a "success" fee.  *See In re Delta Air Lines, Inc.*, 05-17923 (ASH) (Docket No. 6770) (Here, as described below, Lazard requested monthly advisory fees in the amount of $5,455,645 (which were approved in full) and a completion fee of $3,250,000, for total compensation of $8,705,645.).  Similarly, the chair of the Northwest Committee, who negotiated Lazard's completion fee, testified that a "discretionary" fee paid to the creditors' committee's financial advisor in the *United Airlines* bankruptcy at the end of that case was "a very direct comparable as it related to considering Lazard's particular request."  (Lockhart Depos. Tr. 81:8-15.)  *See In re UAL Corp.*, 02-48191 (Docket Nos. 15507, 16081) (Saybrook Restructuring

9

Advisors, LLC received monthly advisory fees in the amount of $7,732,258.06 and a completion fee of $3,500,000, for total compensation of $11,232,258.06.).[3]

**Lazard's Request For Its Completion Fee**

On July 30, 2007, Lazard filed its Final Fee Application. The Final Fee Application sought allowance of fixed monthly fees in the aggregate amount of $5,455,645, reimbursement of expenses incurred in the amount of $167,915.12, and a completion fee of $3,250,000, as agreed with the Debtors. (*See* Final Fee Application.)

Of the thousands of interested parties in these cases, only three objected: (i) the United States Trustee (the "US Trustee"); (ii) a single creditor, CarVal Investors, LLC ("CarVal"); and (iii) one of the Debtors' three unions, the Association of Flight Attendants (the "Flight Attendants" collectively, the "Objectors").[4] (*See* Docket Nos. 7558, 7561, 7566, 7567.) The US Trustee argued that "Lazard provide[d] no justification that [the] completion fee is warranted . . . [or] any evidence that a blended hourly rate of $876 does not fairly compensate Lazard for its services." (*See* Docket No. 7567.) CarVal and the Flight Attendants also claimed that the completion fee sought by Lazard was a disguised "fee enhancement." (*See* Docket Nos. 7558, 7566.) On September 10, 2007, Lazard filed its Response to these objections. (*See* Docket No. 7586.)

The hearing on Lazard's Final Fee Application was scheduled for September 11, 2007, before Judge Gropper, but due to a conflict in a related matter, Judge Gropper recused himself, and the matter was assigned to Judge Morris. Following

---

[3]    Also significant are the fees that were paid to other financial advisors in these cases and in comparable chapter 11 cases. Lazard's compensation, including its completion fee, was well below both the mean and median of such fees, $23.4 million and $17.7 million, respectively. *See* Exhibit B to Kurtz Declaration.

[4]    It should be noted that the other two unions, the Air Line Pilots Association, International and the International Association of Machinists and Aerospace Workers AFL-CIO fully support payment of Lazard's completion fee.

an October 18, 2007 conference before Judge Morris, the parties engaged in discovery: Lazard and the Committee each produced documents requested by the Objectors; David Kurtz, Co-Head of the Global Restructuring Group at Lazard, was deposed on November 14, 2007; and Dana Lockhart and R. Douglas Greco, the Committee's chair and former chair, respectively, were deposed on November 15, 2007. On November 19, 2007, an evidentiary hearing was held before the Bankruptcy Court.

Lazard filed its Post-Trial Brief in support of its completion fee on December 21, 2007. (Docket No. 7913.) The Objectors filed their respective Post-Hearing Briefs. (Docket Nos. 7915, 7919.) Additionally, the Committee filed a Post-Trial Statement in support of Lazard's fee. (Docket No. 7920.) The Bankruptcy Court issued its Decision and Order denying the allowance of Lazard's completion fee on February 29, 2008. Lazard and the Committee each filed a timely notice of appeal on March 10, 2008.

## ARGUMENT

## I.    THE BANKRUPTCY COURT COMMITTED CLEAR ERROR IN FAILING TO CORRECTLY APPLY SECTION 330 OF THE BANKRUPTCY CODE

The Bankruptcy Court concluded, and Lazard does not dispute, that the proper standard for determining the reasonableness of a professional's completion fee, not otherwise approved under section 328 of the Bankruptcy Code,[5] is that provided for in section 330 of the Bankruptcy Code. *See* Bankruptcy Court Decision at 20. However,

---

[5]    Section 328 of the Bankruptcy Code provides, in pertinent part, that an official creditors' committee may employ a "professional person under section 327 or 1103 of [the Bankruptcy Code] on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis or on a contingent fee basis." *See* 11 U.S.C. § 328. Financial advisors often seek pre-approval of their completion fees under section 328 which obviates the need for the court to perform a section 330 reasonableness analysis at the end of the case. Here, however, as described above, Lazard agreed to accommodate the Committee's request to defer consideration of a completion fee until creditor recoveries could be determined.

11

the Bankruptcy Court committed clear error when it formulated a heightened standard by which to evaluate the reasonableness of Lazard's fee instead of applying the applicable criteria explicitly set forth in section 330.

Section 330 of the Bankruptcy Code[6] lists a variety of factors that a court must consider in determining the reasonableness of a professional's fees, such as the time spent providing the services, the rates charged for such services, the value of such services to the estate, the level of skill and expertise required to perform such services, and the customary compensation charged by comparably skilled professionals in non-bankruptcy cases. *See* 11 U.S.C. § 330(a). Here, the Bankruptcy Court erroneously declined to consider the most important of these factors — the market-based approach — and instead, placed undue weight on factors that have little application, if any, under the circumstances. Because the Bankruptcy Court failed to follow the proper standard, it ignored the evidence presented by Lazard. The Bankruptcy Court adopted a

---

[6]    Section 330 of the Bankruptcy Code provides, in pertinent part, that:

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing . . .the court may award to . . . a professional person employed under section 327 or 1103--

    (A) reasonable compensation for actual, necessary services rendered by the professional person; and

    (B) reimbursement for actual, necessary expenses. . .

(a)(3) In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including--

    (A) the time spent on such services;

    (B) the rates charged for such services;

    (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

    (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

    (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

    (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

reasonableness standard so unattainable that it would effectively preclude the payment of a completion fee to any financial advisor, in any circumstance, if it has not been pre-approved under section 328.

### A.    The Bankruptcy Court Erred In Finding The Market-Driven Approach Inapplicable

The customary compensation charged by comparably skilled professionals in non-bankruptcy cases — *i.e.*, the market rate for such services — is specifically enumerated as a relevant consideration under section 330 of the Bankruptcy Code. *See* 11 U.S.C. § 330(a)(3)(F). Courts in this jurisdiction and others have stressed the importance of this factor:

> In keeping with Congress' intention that 'compensation in bankruptcy matters be commensurate with the fees awarded for comparable services in non-bankruptcy courts . . . the Court's inquiry into the "value" of a professional's services often is described as a market-driven approach. That is, if the debtor's professionals, whose retention the Court has previously approved, charge the same amount as the applicable market for comparable services, the Court would need good and articulated reasons to reduce their fee request as excessive.

*In re Cenargo Int'l., PLC*, 294 B.R. 571, 596 (Bankr. S.D.N.Y. 2003). *See In re Ames Dep't Stores, Inc.*, 76 F.3d 66, 71 (2d Cir. 1996) (when it enacted section 330, Congress took "the position that 'compensation in bankruptcy matters be commensurate with the fees awarded for comparable services in non-bankruptcy cases'"); *In re Bennett Funding Group, Inc.*, 213 B.R. 234, 250 (Bankr. N.D.N.Y. 1997) (courts should rely on the "'market' of comparable legal services to assist in determining the level of compensation to be awarded"); *In re Drexel Burnham Lambert Group, Inc.*, 133 B.R. 13, 19-22 (Bankr. S.D.N.Y. 1991) (Congress specifically intended that professionals under title 11 be compensated at the same rate as professionals outside the bankruptcy arena and,

13

therefore, the "market" of comparable legal services must be considered). *See also In re United Artists Theatre Co.*, 315 F.3d 217, 229 (3d Cir. 2003) (recognizing that section 330 "takes a 'market-driven' approach"); *Zolfo, Cooper & Co.* v. *Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 262 (3d Cir. 1995); *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 848 (3d Cir. 1994); *In re Insilco Tech., Inc.*, 291 B.R. 628, 633-634 (Bankr. D. Del. 2003) ("we have recognized that § 330, which deals with what constitutes 'reasonable' compensation for professionals, takes a 'market-driven' approach").

Accordingly, in the Second Circuit, the reasonableness of a *completion fee* under section 330 of the Bankruptcy Code is evaluated using a "market-driven" approach. *Howard* v. *High River Ltd. P'Ship*, 369 B.R. 111 (S.D.N.Y. 2007). In *Howard*, the District Court explicitly concluded that "***the Second Circuit has established a "market-driven" approach*** to fees awarded to professionals under the controlling statute at issue here, section 330 of the Bankruptcy Code." *Id.* at 114 (emphasis added). Furthermore, courts in other Circuits have emphasized the importance of the market approach in determining the propriety of a completion fee. *See In re UDC Homes, Inc.*, 203 B.R. 218, 222 (Bankr. D. Del. 1996) (approving restructuring fee in light of evidence that it was consistent with fees charged in other cases); *In re Intelogic Trace, Inc.*, 188 B.R. 557, 560 (Bankr. W.D. Tex. 1995) (court should "compare the [completion] fee requested to what (and whether) the marketplace pays for such services").

Furthermore, it is equally clear that a bankruptcy court may not disregard the market and substitute its own opinion of the "value" of the services provided. *See In the Matter of Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992) (holding that a judge should not substitute his own "ethical or philosophical sense of 'value'" for the

14

services provided and that "it is not the function of judges in fee litigation to determine the equivalent of the medieval just price."); *see also Busy Beaver*, 19 F.3d at 848-49.

The Bankruptcy Court, however, declined to follow this clear precedent, implying that Lazard was attempting to evade the requirements of section 330: "Lazard . . . ha[s] evaded the evidentiary standards outlined in Section 330 . . . . Instead they attempted to substitute evidence supporting a 'market' theory approach . . . the Court is not persuaded by this theory." *See* Bankruptcy Court Decision at 20-21. In so doing, the Bankruptcy Court clearly erred.

### 1.    The Bankruptcy Court Erred By Improperly Distinguishing The *Howard* Case

The Bankruptcy Court attempted to distinguish *Howard* on the grounds that the financial advisor's engagement letter in that case, in contrast to Lazard's, provided a formula for the calculation of its transaction fee. *See* Bankruptcy Court Decision at 28-29 ("[i]n the event that certain restructuring transactions occurred, [the financial advisor] would also be entitled to receive a transaction fee calculated as a percentage of [the debtor's] outstanding debt, reduced by the total amount of monthly fees it was previously paid").

The Bankruptcy Court, however, failed to recognize that the completion fee formula applied only in the event that "Plan A" was consummated and not in the event that "Plan B" was consummated. As the *Howard* court explained:

> The Retention Order modified the Engagement Letter with regard to Houlihan's fee, granting Houlihan a transaction fee of $20 million if Plan A were consummated, and deferring decision as to the appropriate fee amount if Plan B were consummated. ***The Bankruptcy Court never confirmed a specific fee for Plan B— instead, the reasonableness of a fee for Plan B was to be determined at a subsequent hearing.***

15

*Howard*, 369 B.R. at 113 (emphasis added). In fact, it was "Plan B" that was consummated. *Id.* The *Howard* court, therefore, applied section 330 of the Bankruptcy Code, and concluded that the bankruptcy court had properly determined the amount of the financial advisor's transaction fee because (i) the transaction fee was in an amount which "the market would have awarded," and (ii) the bankruptcy court performed "precisely the type of market-driven fee determination that [it] was called upon to perform." *Id.* at 114-16.

Thus, the Bankruptcy Court misread *Howard* and clearly erred in refusing to consider a market-based approach to the reasonableness determination.[7]

### 2. The Undisputed Evidence Shows That Lazard's Completion Fee Is Reasonable Under The Market-Based Approach

As the evidence presented by Lazard demonstrates, without a completion fee, Lazard's compensation for this engagement would not be commensurate with the fees it routinely charges outside of bankruptcy. In all of Lazard's engagements, Lazard is compensated on an individual assignment basis. (Hearing Tr. (Kurtz) 14:12-15), consisting of a monthly fee and a completion fee. (Hearing Tr. (Kurtz) 14:20-22.) Prior to accepting an assignment, Lazard makes a business judgment in which it evaluates the compensation to be earned against the business that it would be precluded from accepting as a result of the proposed engagement. (Hearing Tr. (Kurtz) 40:21-23; 121:5-20.) When compared to Lazard's customary rates outside of bankruptcy, the monthly fixed compensation paid in the Northwest engagement would not be adequate compensation. (Hearing Tr. (Kurtz) 24:7-10.) In fact, "[i]f the Committee had not agreed to consider

---

[7] The Bankruptcy Court also attempted to distinguish *In re Ames Dept. Stores, Inc.*, 76 F.3d 66 (2d Cir. 1996), on the ground that *Ames* applied the section 330 market-driven approach to an attorney's monthly fees, rather than a completion fee. Bankruptcy Court Decision at 29-30. Such distinction is irrelevant.

providing for Lazard to receive a completion fee, Lazard would not have accepted this engagement," particularly because the engagement precluded Lazard from obtaining other engagements in the airline industry during a time when Lazard's services were in high demand. (Kurtz Declaration ¶¶ 6, 8, 9.)

Moreover, the best evidence for the market rate for a restructuring advisor's fees is the rate charged by other restructuring advisors in similarly complex chapter 11 cases. Implicit in every bankruptcy court's approval of a restructuring advisor's fees is the acknowledgment that such fees are consistent with fees charged for similar services is non-bankruptcy cases. Accordingly, evidence of such fees is routinely relied upon by bankruptcy courts in approving completion fees. *See, e.g., In re UDC Homes, Inc.,* 203 B.R. at 222-23 (considering fees in other Chapter 11 cases appropriate comparables because they also are consistent with the out-of-court market).

Here, Lazard presented substantial and undisputed evidence regarding the market rate for completion fees in comparable chapter 11 cases. Such evidence demonstrated that Lazard's requested completion fee is well below the mean and median fees that, on both a nominal and comparative basis, have been approved and paid to financial advisors for both creditors' committees and debtors in similarly complex chapter 11 cases. (Kurtz Declaration, Exhibit B; Hearing Tr. (Kurtz) 24:7-19; 33:21-34:2.) Particularly relevant are the chapter 11 cases of *Delta Airlines* and *United Airlines*, where the financial advisors to the creditors' committees received completion fees in the amounts of $5,000,000 and $3,500,000, respectively, for total compensation in the amounts of $8,600,000 and $11,232,258.06, respectively. *See* Lazard Post-Trial Brief

at 12-13.  As described above, if its completion fee is approved, Lazard would receive a total of $8,705,465.

The Bankruptcy Court erroneously rejected this evidence because the completion fees in *Delta Airlines* and *United Airlines* were pre-approved under section 328, rather than determined at the end of the cases under section 330.  Bankruptcy Decision at 31-33.  But the market for such fees is the same regardless of whether they are pre-approved under section 328 or subject to a reasonableness review under section 330.

**B.    Lazard Conferred A Substantial Benefit On The Debtors' Estates**

The benefit conferred upon the Debtors' estates by Lazard is another relevant factor under Bankruptcy Code section 330 which the Bankruptcy Court ignored. *See* 11 U.S.C. § 330(a)(3)(C) ("whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title").  In fact, one court in this jurisdiction found that this "benefit" factor, along with the market factor, is particularly relevant in determining the reasonableness of a financial advisor's completion fee. *See In re XO Commc'ns, Inc.*, 323 B.R. 330, 340 (Bankr. S.D.N.Y. 2005) ("relevant factors to consider in assessing Houlihan's request for payment of the Transaction Fee [under section 330] are (A) whether Houlihan's services were necessary and beneficial to the estates at the time they were rendered, and (B) whether the requested fee is commensurate with compensation awarded for comparable services outside of bankruptcy").

Consistent with section 330(a)(4)(A)(ii)(I), in this Circuit it is well established that the "benefit" prong of the section 330 analysis is satisfied if a professional's services "are reasonably likely to benefit the debtor's estate." *See*

18

11 U.S.C. § 330 (a)(4)(A)(ii)(I) (compensation not allowed for services not "reasonably likely to benefit the debtor's estate"); *Ames*, 76 F.3d at 72; *Kovalesky* v. *Carpenter*, No. 95 Civ. 3700, 1997 WL 666299, *5 (S.D.N.Y. Oct. 23, 1997); *In re Angelika Films 57th, Inc.*, 227 B.R. 29, 42 (Bankr. S.D.N.Y. 1998). However, although the Bankruptcy Court concluded that Lazard's completion fee should be evaluated under section 330, it chose not to apply this standard. Instead, the Bankruptcy Court invented a heightened "benefit" standard, implying that Lazard must prove that the Debtors' successful reorganization was solely a result of Lazard's work. *See* Bankruptcy Court Decision at 29-30, 35 ("[i]t is unclear to the Court whether, with reasonable certainty, the 'successes' being claimed by Lazard [] are solely attributable to [it]"). This is simply not the standard under section 330; rather, the Second Circuit has explicitly rejected the Bankruptcy Court's "niggardly approach" of requiring proof of "actual benefit to the estate." *Ames*, 76 F.3d at 71.

There has been no suggestion whatsoever by any of the Objectors, or any party in these cases, that the services Lazard performed were not reasonably likely to benefit the Debtors' estates. In any event, the evidence is clear and undisputed that Lazard provided a considerable benefit. Lazard is both an airline industry expert and a restructuring expert (Hearing Tr. (Kurtz) 13:21-14:11), and thus was uniquely qualified to serve as the Committee's financial advisor in these cases. (*Id.*; Declaration of Dana J. Lockhart (the "Lockhart Declaration") ¶ 4 (Docket No. 7581); Lockhart Depos. Tr. 70:17-71:10.) Furthermore, Lazard played a key role in working directly with the Debtors themselves. (Hearing Tr. (Kurtz) 17:22-18:19; 22:1-8.) Lazard evaluated extensively the Debtors' restructuring initiatives, and in certain respects, helped to develop the Debtors' strategy with respect to critical aspects of these chapter 11 cases,

including fleet restructuring initiatives, financing arrangements, business plan development and revisions, industry consolidation risks and opportunities, a rights offering and valuation analysis.

Moreover, both the Committee and the Debtors – the parties most familiar with Lazard's work in these cases – determined that Lazard deserved a completion fee based on the contribution it made in these cases. (Lockhart Depos. Tr. 78:25-79:12; 83:6-25; Hearing Tr. (Kurtz) 34:20-22; 35:20-36:16.) And, that the Committee, which was unwilling to award any of its professionals a completion fee until it was satisfied that such a fee was warranted, and whose members represent a range of sophisticated creditors, supports payment of Lazard's fee, is strong evidence that it is appropriate. Finally, Judge Gropper, who witnessed all the professionals' efforts over a period of two years, termed the cases an "exceptional success." (Sept. 11, 2007 Hearing Tr. (Gropper, J.) 83:24-25.)

**C.    Lazard Exhibited Substantial Skill And Expertise**

A professional's skill and expertise is also relevant to the section 330 analysis. *See* 11 U.S.C. § 330(a)(3)(E). And, Lazard undoubtedly satisfies this prong of section 330 as well. Lazard is both an airline industry expert and a restructuring expert (Hearing Tr. (Kurtz) 13:21-14:11), and thus was uniquely qualified. (*Id.*; Lockhart Declaration ¶ 4; Lockhart Depos. Tr. 70:17-71:10.) The Lazard team was comprised of seasoned bankers from the restructuring and airline groups who have worked on large and complex restructurings, specifically in the airline industry. (Hearing Tr. (Kurtz) 13:24-14:6.)

Lazard and its principals have advised debtors, creditors, equity constituencies and government agencies in many prominent reorganization cases, as well

as in M&A and capital market projects. (Kurtz Declaration ¶ 5.) Since 1990, Lazard's

professionals have been involved in over 200 restructurings, representing over $300

billion in debtor assets. *Id.* In addition, Lazard has served as financial advisor to the Air

Transportation Stabilization Board in the chapter 11 cases of Aloha Airlines, ATA

Airlines and US Airways. *Id.* ¶ 2, 6. It also represented Lufthansa in the United Airlines

chapter 11 cases and in matters involving certain of its domestic subsidiaries. *Id.* And,

of the more than 6,000 hours that Lazard devoted to this engagement, 62% of them were

expended by bankers from Lazard's airline group. *Id.* ¶ 18.

        The evidence proving Lazard's skill and expertise is uncontroverted.

Accordingly, this factor supports the award of Lazard's completion fee.

      **D.**      **The "Lodestar" Approach to Reasonableness Is Not Applicable Here**

        The Bankruptcy Court also erred in asserting that the "lodestar" test

applies to Lazard's request for a completion fee. In the context of attorney compensation,

the lodestar approach, which multiplies the hours spent on a particular assignment by the

rate charged per hour, is generally helpful as a method of evaluating two of the factors

under section 330, namely, "the time spent upon *legal* services and the rate charged for

those services." *See* Bankruptcy Court Decision at 23 (internal citations omitted)

(emphasis added). However, the lodestar approach is not appropriate in evaluating

financial advisory fees because, unlike attorneys who charge an hourly rate for legal

services, financial advisors like Lazard customarily charge a fixed monthly advisory fee

and a completion fee. *See Howard*, 369 B.R. at 115. Lazard is never compensated by

means of an hourly rate structure, and its professionals are not assigned hourly rates.

(Hearing Tr. (Kurtz) 14:23-25; 40:16-19.) Therefore, the "lodestar" test – which

multiplies billing rate by hours expended – does not lend itself to a determination of

21

reasonableness for financial advisors. *In re EWI, Inc.*, 208 B.R. 885, 891 (Bankr. N.D. Ohio 1997) (finding the lodestar approach inapplicable to financial advisors who, in general, do not keep itemized time records of the services they perform).[8]

Accordingly, the Bankruptcy Court erred by focusing on the lodestar test rather than applying the pertinent section 330 factors.

## II.    THE BANKRUPTCY COURT'S DECISION FRUSTRATES BANKRUPTCY CODE POLICY

The Bankruptcy Court Decision frustrates the policy of the Bankruptcy Code in two distinct ways. *First*, the legislative intent of section 330 makes clear that bankruptcy professionals are to be paid consistent with the market to encourage high quality professionals to undertake bankruptcy matters with the expectation that they will add value and enhance the prospects of a successful reorganization. *See* H.R. Rep. No. 95-595, at 329-30 (1977); 124 Cong. Rec. § 17,406 at 6511 (daily ed. Oct. 6, 1978). Otherwise, as Congress feared, competent professionals like Lazard would have little incentive to work on bankruptcy cases. *See id.* As has been noted, the

> practice of some bankruptcy courts in attempting to squeeze the investment banks into the lawyer/accountant mold, and their failure to understand what the banks contributed to the process has discouraged some highly qualified firms from seeking to participate in the reorganization process, which only serves as a detriment to the process.

James W. Giddens, *Compensation of Investment Bankers in Bankruptcy Proceedings: Just or Unjust Enrichment?,* 23 Ann. Rev. Banking & Fin. L. 485, 493 (2004).

---

[8]    Relatedly, section 330(a)(3)(D) considers "whether a professional performed its services within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed." This factor protects against a professional who bills by the hour (*i.e.,* an attorney) from improperly inflating its fees by billing too many hours on a particular task. Given that Lazard charges a flat fee regardless of the number of hours worked, this factor is irrelevant here.

*Second*, the Bankruptcy Court Decision forces financial advisors to demand a completion fee upon retention rather than deferring determination of such fee until the end of a case when the job has been completed and creditor recoveries are known.  This would limit the ability of debtors and committees alike to be vigilant in their use of estate funds.  Rather than allowing debtors and committees to determine a professional's compensation after they have fully reviewed the professional's performance, they would be forced to approve a professional's entire compensation package at the outset of a case.  Such a perverse result defies the aim of the Bankruptcy Code to compensate professionals fairly and reasonably.

## CONCLUSION

The Bankruptcy Court clearly erred by misapplying section 330 of the Bankruptcy Code in denying Lazard's completion fee.  *First*, it rejected the market-based approach of section 330(a)(3)(F).  *Second*, it ignored the market's concept of value. *Third,* it created a heightened and unattainable "benefit" standard, effectively precluding any financial advisor from obtaining approval of a completion fee under section 330. *Fourth*, it improperly evaluated Lazard's fee using the lodestar approach, which is inapplicable to financial advisory fees, while disregarding other relevant factors.  *Finally,* the Bankruptcy Court overlooked substantial and undisputed evidence presented by Lazard, including the benefits it conferred and Lazard's skill and expertise, that justifies approval of its completion fee under section 330.  Unfortunately, the Bankruptcy Court's misguided ruling creates the wrong policy dynamic: it would penalize bankruptcy estates by deterring expert financial advisors from accepting bankruptcy engagements.  At the very least it would require such advisors to lock in the full amount of their fees at the

beginning of a case before performance or creditor recoveries could be assessed — a result that is neither required by statute nor desirable in practice.

For all of these reasons, Lazard and the Committee respectfully request that this Court reverse the Bankruptcy Court Decision and approve Lazard's completion fee.

Dated: New York, New York
      May 22, 2008

PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP

By:   /s/  Alan W. Kornberg
Alan W. Kornberg *(akornberg@paulweiss.com)*
    (A Member of the Firm)

Philip Barber *(pbarber@paulweiss.com)*
1285 Avenue of the Americas
New York, New York  10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990

Attorneys for Appellant Lazard Frères Co., LLC,
Financial Advisor to the Official Committee of
Unsecured Creditors

OTTERBOURG, STEINDLER, HOUSTON
    & ROSEN, P.C.

By:   /s/  Scott L. Hazan
Scott L. Hazan *(shazan@oshr.com)*
    (A Member of the Firm)

John Bougiamas *(jbougiamas@oshr.com)*
230 Park Avenue
New York, NY 10169-0075
Tel: (212) 661-9100
Facsimile:  (212) 682-6104

Attorneys for Appellant Official Committee of
Unsecured Creditors

Filed on behalf of Lazard Frères Co., LLC and the Official Committee of Unsecured Creditors upon consent.

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2008 I caused copies of the **Joint Brief in Support of Appeal from Decision of the Bankruptcy Court Denying Completion Fee Portion of Final Fee Application** to be served on the following:

Brian Shoichi Masumoto
Alicia M. Leonhard
Office of the United States Trustee
33 Whitehall Street, 21st Floor
New York, NY 10004

Allan S. Brilliant
Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018

Hanan  B. Kolko
Meyer, Suozzi, English & Klein
1350 Broadway, Suite 501
New York, NY 10018

P. Bradley O'Neill
Kenneth H. Eckstein
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036

Scott L. Hazan
Brett Miller
Otterbourg, Steindler, Houston & Rosen, P.C.
230 Park Avenue
New York, NY 10169

Sean C. Southard
Klestadt & Winters, LLP
292 Madison Avenue, 17th Floor
New York, NY 10017

Robert S. Clayman
Guerrieri, Edmond, Clayman & Bartos
1625 Massachusetts Ave., N.W., Suite 700
Washington, D.C. 20036-2243

Service on Robert S. Clayman was made by Federal Express.  Service on Brian Shoichi Masumoto, Allan S. Brilliant, Hanan B. Kolko, P. Bradley O'Neill, Kenneth H. Eckstein, Scott L. Hazan, Brett Miller and Sean C. Southard was made by hand delivery.

By: _____

Samantha G. Amdursky
samdursky@paulweiss.com
Paul, Weiss, Rifkind, Wharton & Garrison, LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone  212.373.3251