UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

In re:                                          :
                                                :   Chapter 11
NORTHWEST AIRLINES CORPORATION,                 :
<u>et al.</u>                                   :   Case No. 05-17930 (ALG)
                                                :
                              Debtors.          :   Jointly Administered

-----------------------------------------------------------------x

LAZARD FRERES & CO., LLC,                        :
                                                :   District Court
                              Appellant,         :
v.                                              :   Case No. 08–CV03456 (NRB)
                                                :
DIANA G. ADAMS, United States Trustee;          :
CARVAL INVESTORS, LLC; and                      :
ASSOCIATION OF FLIGHT ATTENDANTS -              :
CWA, AFL-CIO,                                   :
                                                :
                              Appellees.         :

-----------------------------------------------------------------x

OFFICIAL COMMITTEE OF UNSECURED                 :
CREDITORS OF NORTHWEST AIRLINES                 :
CORPORATION,                                    :
                                                :   District Court
                              Appellant,         :
v.                                              :   Case No. 08–CV03456 (NRB)
                                                :
DIANA G. ADAMS, United States Trustee;          :
CARVAL INVESTORS, LLC; and                      :
ASSOCIATION OF FLIGHT ATTENDANTS -              :
CWA, AFL-CIO,                                   :
                                                :
                              Appellees.         :

-----------------------------------------------------------------x

**JOINT BRIEF IN OPPOSITION TO APPEALS FROM DECISION OF THE
<u>BANKRUPTCY COURT DENYING ADDITIONAL COMPENSATION</u>**

Sean C. Southard
KLESTADT & WINTERS, LLP
292 Madison Avenue, 17th Floor
New York, NY 10017-6314
Telephone: (212) 972-3000

*Attorneys for Appellee CarVal
Investors, LLC*


Robert S. Clayman
GUERRIERI, EDMOND,
CLAYMAN & BARTOS, P.C.
1625 Massachusetts Avenue, N.W.,
Suite 700
Washington, DC  20036
Telephone: (212) 624-7400

*Attorneys for Association of Flight
Attendants-CWA, AFL-CIO*

# TABLE OF CONTENTS

Page

INTRODUCTION...................................................................................................1
BASIS OF APPELLATE JURISDICTION .........................................................1
ISSUE PRESENTED ON APPEAL ....................................................................1
STANDARD OF APPELLATE REVIEW ..........................................................2
STATEMENT OF THE CASE .............................................................................3
STATEMENT OF THE FACTS ..........................................................................5
ARGUMENT........................................................................................................7

I.     THE BANKRUPTCY COURT CORRECTLY APPLIED THE
       STANDARDS ARTICULATED UNDER BANKRUPTCY CODE
       SECTION 330 AND APPLICABLE CASE LAW IN CONSIDERING
       LAZARD'S REQUEST FOR ADDITIONAL COMPENSATION.......................7

II.    ASSUMING, ARGUENDO, THAT THE BANKRUPTCY COURT
       ERRED IN TREATING THE LAZARD REQUEST FOR ADDITIONAL
       COMPENSATION AS A FEE ENHANCEMENT, THE REQUEST STILL
       FAILS UNDER A REASONABLENESS ANALYSIS UNDER SECTION
       330 OF THE BANKRUPTY CODE. ....................................................................11

       A.     Lazard's Request Was Not Made In Accordance With Market
              Norms.................................................................................................12

       B.     The Bankruptcy Court Properly Distinguished the *XO
              Communication* Cases...................................................................12

       C.     Lazard's Analysis Is Fundamentally Flawed As It Is Allegedly
              Based Solely Upon A Comparison Of The Total Debt Of
              Northwest And Other Bankrupt Companies, A Criterion From
              Which The Market Rate Cannot Be Established. ......................................14

       D.     Even Assuming That The Market Rate Can be Derived From The
              Fees Awarded In Cases Where The Total Debt Is Comparable To
              Northwest's Debt, Lazard Does Not Base Its Analysis On Such
              Cases. ..................................................................................................17

       E.     Lazard's Analysis Is Further Flawed By Its Reliance On Cases
              That Are Incomplete Or Not Representative Of The Market Rate............18

       F.     While Lazard May Be Compensated On An Individual Assignment
              Basis, It Still Must Demonstrate That Its Fees When Calculated On
              An Hourly Basis Are Reasonable. ............................................................19

III.   THE BANKRUPTCY COURT'S DECISION STRENGTHENS
       BANKRUPTCY CODE POLICY ..........................................................................21

CONCLUSION .........................................................................................................22

## TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

Bernheim v. Damon and Morey, LLP,
    2007 U.S. App. LEXIS 15530, at *2 (2d Cir. June 28, 2007)…………...….......... 2

Goldberger v. Integrated Resources Inc.,
    209 F.3d 43, 47—48 (2d Cir. 2000)……………………………………...…… 2

In re Adelphia Communications Corp.,
    2006 U.S. Dist. LEXIS 37112, at *6 (S.D.N.Y. Apr. 7, 2004)………………….. 2

In re Aminex Corp.,
    15 B.R. 356 (Bank. S.D.N.Y. 1981) …………………………………….…..…11

In re Arnold & Baker Farms,
    2005 WL 1213818 (Bankr. D. Ariz. 2005) .……………………………………11

In re Angelika Films 57th Inc.,
    246 B.R. 176, 178 (S.D.N.Y. 2000) ……………………………………...…… 2

In re Bolar Pham. Co. Sec. Litigation,
    966 F.2d 731, 732 (2d Cir. 1992)…………………………………………...…… 2

In re Hillsborough Holdings Corp.,
    191 B.R. 937 (Bankr. M.D. Fla. 1995)..................................................................10

In re JLM, Inc.,
    210 B.R. 19, 23 (2d Cir. 1997) ………………………………………………….. 2

In re Martin,
    817 F.2d 175, 182 (1st Cir. 1987)…………………………………..……… 2

In re Mennella,
    2008 U.S. Dist. LEXIS 5532, at *7—8 (E.D.N.Y. Jan. 24, 2008)……………… 2

In re Morris Plan Co. of Iowa,
    100 B. R. 451 (Bankr. N. D. Iowa 1989) ………………………………………..11

In re Nucentrix Broadband Networks, Inc., et al.,
    314 B.R. 574 (Bankr. N.D. Tex. 2004)……………………………………..10

In re United Merchants and Manufacturers, Inc.,
    1999 U.S. Dist. LEXIS 84, at *2 (S.D.N.Y. Jan. 5, 1999)………………..…... 2

In re XO Communications, Inc.,
    323 B.R. 330 (Bankr. S.D.N.Y. 2005); aff'd Houlihan Lokey Howard & Zukin
    Capital v. High River Ltd. P'ship, 369 B.R. 111 (S.D.N.Y.
    2007)………………………………………………………………….………12-14

## FEDERAL STATUTES

11 U.S.C. § 328………………………………………………...…………4-5, 7, 9, 13

11 U.S.C. § 330…………………………………………………………. *passim*

28 U.S.C. § 158(a)(1)………………………………………………………… 1

Fed. R. Bankr. P. 8001(a) ………………………………………………… 1

## INTRODUCTION

CarVal Investors, LLC ( "CarVal") and the Association of Flight Attendants-CWA, AFL-CIO ("AFA") submit this brief ("Opposition Brief"): (i) in support of the decision and order ("Bankruptcy Court Decision") entered by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on February 29, 2008 denying the additional compensation (the "Additional Compensation") requested by Lazard Freres & Co. ("Lazard") and FTI Consulting, Inc. ("FTI"), and (ii) in opposition to the Joint Brief In Support Of Appeals From Decision Of The Bankruptcy Court Denying Completion Fee Portion Of Final Fee Application filed in the United States District Court for the Southern District of New York on May 22, 2008 (the "Appellants' Brief") by Lazard and its client, the Official Committee of Unsecured Creditors of Northwest Airlines Corp. (the "Committee" and together with Lazard, referred to as "Appellants").

## BASIS OF APPELLATE JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. Section 158(a)(1) and Fed. R. Bankr. P. 8001(a).

## ISSUE PRESENTED ON APPEAL

Whether the Bankruptcy Court abused its discretion in determining that Lazard is not entitled to receive the Additional Compensation requested in its final fee application.

## STANDARD OF APPELLATE REVIEW

The Bankruptcy Court's legal conclusions are subject to de novo review, factual findings are subject to clearly erroneous standard, and decisions based on equitable relief are subject to an abuse of discretion review. Nevada Power Co. v. Calpine Corp. (In re Calpine Corp.), 365 B.R. 401, 407 (S.D.N.Y. 2007); In re Adelphia Communications Corp., 2006 U.S. Dist. LEXIS 37112, at *6 (S.D.N.Y. Apr.7, 2004); Feldman v. United Merch. and Mfrs., Inc. (In re United Merch. and Mfrs., Inc.), 1999 U.S. Dist. LEXIS 84, at * 2 (S.D.N.Y. Jan. 5, 1999). Specifically, in cases that deal with fee applications, the appellate court employs an abuse of discretion standard. In re United Merch. and Mfrs., Inc., 1999 U.S. Dist. LEXIS 84, at *2 (citing Zeisler & Zeisler, P.C. v. Prudential Ins. Co. of Am. (In re JLM, Inc.), 210 B.R. 19 (B.A.P. 2d Cir. 1997).

An abuse of discretion occurs when "(1) the bankruptcy judge fails to apply the proper legal standard or follows improper procedures in determining the fee award, or (2) bases an award on findings of fact that are clearly erroneous." Bernheim v. Damon and Morey, LLP, 2007 U.S. App. LEXIS 15530, at *2 (2d Cir. June 28, 2007) (quoting In re JLM, Inc., 210 B.R. at 23; In re Mennella, 2008 U.S. Dist. LEXIS 5532, at *7—8 (E.D.N.Y. Jan. 24, 2008); Tenzer Greenblatt, LLP v. Silverman (In re Angelika Films 57th, Inc.), 246 B.R. 176, 178 (S.D.N.Y. 2000).

Specifically in regard to fee applications, the bankruptcy court's decision deserves great deference. In re Angelika Films 57th, Inc., 246 B.R. at 178. The appellate court employs such deference because the presiding bankruptcy court is "intimately familiar with the nuances of the case, is in far better position to make [such] decision than is an appellate court, which must work from a cold record." Goldberger v. Integrated Resources Inc., 209 F.3d 43, 47—48 (2d Cir. 2000) (quoting In re Bolar Pham. Co. Sec.

2

Litigation, 966 F.2d 731, 732 (2d Cir. 1992)); In re Angelika Films 57th Inc., 246 B.R. at

178 (quoting In re Martin, 817 F.2d 175, 182 (1st Cir. 1987)("The bankruptcy judge is on

the front line, in the best position to gauge the ongoing interplay of factors and to make

the delicate judgment calls which such a decision entails.").

## STATEMENT OF THE CASE

The Bankruptcy Court, after careful review of the factual record and applicable

law, appropriately exercised its discretion in denying Lazard's request for Additional

Compensation in connection with the services it rendered to the Committee as financial

advisor.

At the time of its retention, Lazard and the Committee chose not to define any

standards (objective or otherwise), benchmarks, parameters or other conditions to

entitlement with respect to any future request that Lazard might make in the chapter 11

case for Additional Compensation. When the request for substantial Additional

Compensation was lodged at the end of the case after Lazard was paid its flat monthly

retainer fee and competed all services for the Committee, certain parties in interest,

including Appellees, were surprised by the same and timely objected.

The Bankruptcy Court properly concluded that no agreement was reached or

disclosed that had granted Lazard an entitlement to a market-based success or completion

fee as Lazard previously argued. Instead, the Bankruptcy Court found that at the time of

the Final Retention Order, Lazard had merely preserved the right to make a request to the

Bankruptcy Court for unspecified Additional Compensation.

The Bankruptcy Court examined the circumstances surrounding retention of

financial advisors in other chapter 11 cases, including certain of the comparable

situations suggested by Lazard. The Bankruptcy Court properly drew clear distinctions

between the mere right to request unspecified Additional Compensation preserved by Lazard in the instant case, and the seemingly common approach utilized by other financial advisors to define the terms or method of calculation of any additional fee entitlements and seek approval of the same at the time of retention. Despite the fact that Lazard's monthly fee and expenses were approved under 11 U.S.C. §328, in light of the very different approach taken by Lazard in regard to its request for Additional Compensation, the Bankruptcy Court concluded that it was free to review Lazard's request for Additional Compensation, and the arguments that it offered in support of same, without any limitations imposed by 11 U.S.C. §328. The Bankruptcy Court further determined that since the terms entitling Lazard to Additional Compensation were not specified or defined anywhere in the record, it was left to make a final determination as to the intent of the parties and the implications of the failure to define the entitlements at the outset of Lazard's engagement. In an appropriate use of its discretion, the Bankruptcy Court treated Lazard's request for Additional Compensation as a request for a fee enhancement and applied the recognized legal standard in analyzing and ultimately denying the request for Additional Compensation.

When looking at Appellants' own analysis now offered to justify the reasonableness of the Additional Compensation, it becomes abundantly clear that Lazard the Additional Compensation is not warranted. The record shows that Lazard's benchmarking analysis, even if admissible,[1] suffers from at least three major flaws, in that: (1) it is based on only one non-determinative criterion – the debtor's total debt; (2) it

---

[1] It does not appear from the record that the benchmarking analysis docketed by Lazard (Docket No. 8154) just prior to Appellants' designation of the record on appeal was ever offered into or accepted into evidence by the Bankruptcy Court.

utilizes non-comparable cases; and (3) it is comprised of incomplete, skewed, and otherwise unreliable data. Additionally, Lazard failed to consider the actual number of hours it worked on this case in determining the reasonableness of its fee.

In light of the foregoing and for the reasons set forth below, Appellees request that this Court affirm the Bankruptcy Court Decision and deny Lazard its request for Additional Compensation.

## STATEMENT OF THE FACTS

By final order entered on or about July 21, 2006 (Docket No. 3112) (the "Final Retention Order"), Lazard was retained as one of the financial advisors to the Committee appointed in the jointly administered chapter 11 cases (the "Chapter 11 Cases") of Northwest Airlines Corporation, et al. (the "Debtors") pursuant to Sections 328(a) and 1103(a) of title 11 of the United States Code (the "Bankruptcy Code"). The Final Retention Order was entered some seven months after the Committee filed its application to retain Lazard on or about November 7, 2005 (Docket No. 948) (the "Retention Application"). After approximately twenty months of rendering services to the Committee during the pre-confirmation period in these Chapter 11 Cases at the rate of $275,000 per month plus expenses, Lazard had earned compensation of approximately $5,455,645.

On July 30, 2007, Lazard filed its Final Application for Allowance of Compensation and for Reimbursement of Expenses for Services Rendered in These Cases for the Period October 6, 2005 Through May 31, 2007 (the "Final Fee Application") (Docket No. 7431). Through the Final Fee Application, Lazard, for the first time, sought approval of substantial Additional Compensation in the amount of $3,250,000

characterized by Lazard as a "completion fee" in connection with its role as financial advisor to the Committee in the Chapter 11 Cases.

The Final Fee Application requests allowance of (a) $5,455,645 in monthly advisor fees, (b) $167,915.12 in expenses incurred, and (c) $3,250,000 in Additional Compensation, for a total of $8,873,560.12.

On September 4, 2007, the United States Trustee, CarVal Investors, LLC and The Associated of Flight Attendants – CWA, AFL-CIO (the "Objectors") filed an objection to the Additional Compensation requested by Lazard (the "Objection") (Docket No. 7567). In response, Lazard supplemented the record by filing a response to the Objection (Docket No. 7586) (the "Response") on or about September 10, 2007.

On or about November 2, 2007, the Bankruptcy Court entered an order (Docket No. 7749) approving, without opposition, all requests for relief in the Final Fee Application other than Lazard's request for Additional Compensation (the "Fee Approval Order").

An evidentiary hearing (the "Evidentiary Hearing") on the Final Fee Application and the Objection was held before the Bankruptcy Court on November 19, 2007.  At the conclusion of the Evidentiary Hearing, the Bankruptcy Court requested that the interested parties each submit a post-hearing brief in lieu of oral argument (each, a "Post Hearing Brief") as well as designated portions of the transcripts from the Committee's witnesses that chose not to appear in person at the Evidentiary Hearing.

The Bankruptcy Court Decision was docketed on February 29, 2008 after more than three months of consideration of the record established by the parties.  As further outlined below, Appellees believe that the record and the Bankruptcy Court Decision

properly reflect the fact that Appellants failed to meet their burden of proof under the applicable standard and that no Additional Compensation is warranted under the circumstances.

## ARGUMENT

I. **THE BANKRUPTCY COURT CORRECTLY APPLIED THE STANDARDS ARTICULATED UNDER BANKRUPTCY CODE SECTION 330 AND APPLICABLE CASE LAW IN CONSIDERING LAZARD'S REQUEST FOR ADDITIONAL COMPENSATION**

Lazard's request for Additional Compensation was made to the Bankruptcy Court for the first time after the services were rendered and the engagement was completed by Lazard. Appellants' position on appeal is, essentially, that Lazard would not be adequately or reasonably compensated in accordance with "market" standards if Lazard receives only (a) $5,455,645 in monthly advisor fees, and (b) $167,915.12 in expenses.[2]

Though Lazard avoided Section 330 of the Bankruptcy Code and instead argued throughout its Post-Trial Brief that the Bankruptcy Court should apply Section 328 and consider its "completion fee" to be pre-approved, Appellants' now embrace the Bankruptcy Court Decision to the extent that it call for the application of Section 330, but claim that the Bankruptcy Court clearly erred in applying the relevant legal standards.

After considering the evidence and the arguments of the parties,[3] the Bankruptcy Court found that "neither FTI's nor Lazard's requests for a success fee were

---

[2] To put the Additional Compensation request in context, if awarded in the amounts requested, the blended <u>hourly</u> rate of compensation for all of Lazard's timekeepers would increase from approximately $875 to nearly $1,398. <u>See</u> Evidentiary Hearing, Tr. 110:18-110:19.

[3] The Bankruptcy Court notes that its findings of fact are based on "the parties' submissions, documentary exhibits admitted in evidence including deposition transcripts, transcripts of Court proceedings, and the testimony of witnesses." <u>(Bankr. Ct. Dec., 4).</u>

'preapproved' in their retention applications under Bankruptcy Code Section 328."

Bankr. Ct. Dec., 11-12.  "Furthermore, their request for a success fee also fails to meet

the standard outlined under Bankruptcy Code Section 330."  Id.

 The Bankruptcy Court previously concluded that Lazard's receipt of monthly fees

and expenses were reasonable and appropriate.  Fee Approval Order, 4.  Then, in light of

its findings with respect to the nature of the request for Additional Compensation, the

Bankruptcy Court applied the appropriate standard of review previously employed in the

body of cases examining the reasonableness of requests for fee enhancement and/or

bonuses by estate professionals at the conclusion of the respective engagements.

 Appellants' inaccurately argue that the Bankruptcy Court devised a "heightened

standard" to evaluate the reasonableness of Lazard's fees instead of applying the criteria

explicitly set forth in Section 330.  Appellants attempt to mischaracterize the Bankruptcy

Court Decision[4] by stating that the Bankruptcy Court ignored evidence of the "market"

rates for similarly situated professionals and erred by not determining that Lazard's post-

---

 [4] The careful reader would note the following example of how Appellants quote the

Bankruptcy Court Decision:

> "Lazard … ha[s] evaded the evidentiary standards outlined in Section 330 …
> Instead they attempted to substitute evidence supporting a "market" theory
> approach … the Court is not persuaded by this theory" (emphasis added).  See
> Appellants' Brief, 15.

In the foregoing, Appellants attempt to portray the Bankruptcy Court as rejecting the "market"

theory approach.  Appellants have conveniently deleted an important portion of the last sentence.

The complete sentence reads:

>  "As discussed, in Part IV.B., infra, the Court is not persuaded by this theory
> **absent compliance with the standards outlined in Bankruptcy Code Section
> 330(a)**." (Emphasis added).  See Bankr. Ct. Dec., 22.

engagement request for Additional Compensation was in accordance with the "market" and therefore reasonable under Section 330 of the Bankruptcy Code. Appellants' position on appeal is not supported by the record.

What the Bankruptcy Court ultimately concluded was that unless pre-approved at the time of retention under Section 328, a successful reorganization alone is insufficient evidence to justify and automatically reward professionals with additional fees. (Bankr. Ct. Dec., 35).

No terms and conditions concerning qualification for entitlement or the amount of the Additional Compensation were disclosed or approved under the Final Retention Order, though all other components of the compensation package for Lazard were vetted, noticed and approved. See Final Retention Order. Lazard accepted the engagement despite the potential that it may not receive any Additional Compensation other than that which it bargained for at the outset of the engagement. The Committee intentionally deferred all determinations concerning the Additional Compensation until after confirmation and conclusion of the services rendered by Lazard. The record suggests that after conclusion of the Advisor's engagement, the Committee decided that the services rendered by the Advisor and the results of the case for its constituency were significant enough to warrant payment of the Additional Compensation requested by the Advisor. See Lockhart, Tr. 78:25 – 79:12.

Under these circumstances, it is very difficult to look at Lazard's post-confirmation request for Additional Compensation as anything but a fee enhancement or bonus requested by Lazard at the conclusion of the engagement. Despite Appellants' arguments to the contrary, it is evident from the Bankruptcy Court Decision that the

9

Bankruptcy Court properly exercised its discretion and evaluated Lazard's application for Additional Compensation relative to fee enhancements or bonuses sought by estate professionals.

Bankruptcy Courts authorize fee enhancements for estate professionals where rare and exceptional circumstances warrant the enhancement in order to adequately compensate the professionals for the services performed and results achieved. See In re Nucentrix Broadband Networks, Inc., et al., 314 B.R. 574 (Bankr. N.D. Tex. 2004) (awarding enhancement of 10% for counsel to the debtors); In re Hillsborough Holdings Corp., 191 B.R. 937 (Bankr. M.D. Fl. 1995) (awarding enhancements of 5 and 10% to estate professionals).

Appellants have not made a showing that Lazard encountered novel or extraordinary issues during the course of the Chapter 11 Cases. Indeed, no showing was made which proves that the services provided were not otherwise broadly articulated in the Retention Application. Moreover, no specific evidence has been offered by Appellants that the quality of the services rendered was superior to that expected in light of the present $875 blended hourly rate (6,227 hours in exchange for $5,455,645), nor that the success of the Chapter 11 Cases was exceptional. In fact, neither Lazard nor the Committee believed any qualitative analysis was required to support the Additional Compensation and therefore did not prepare such an analysis. See Evidentiary Hearing, Tr. 63:4 – 63:7.

None of the indicia of an extraordinary result is present here. The unsecured creditors in the Chapter 11 Cases did not receive a full recovery—a factor usually found by courts authorizing an enhancement. See, e.g., In re Arnold & Baker Farms, 2005 WL

10

1213818 (Bankr. D. Ariz. 2005) (fee enhancement awarded where debtor's counsel faced

risk of non-payment at the outset of the case and at the conclusion of the case, the

unsecured creditors were paid in full); In re Morris Plan Co. of Iowa, 100 B. R. 451

(Bankr. N. D. Iowa 1989) (fee enhancement awarded where counsel demonstrated

superior skill in obtaining FSLIC insurance and where plan as confirmed paid creditors

the full amount of their claims plus interest); In re Aminex Corp., 15 B.R. 356 (Bankr.

S.D.N.Y. 1981) (fee enhancement appropriate where creditors received 100% recovery at

conclusion of cases).  Moreover, the post-bankruptcy recovery failed to generate any

substantial gains for former creditors.  In fact, the performance of stock issued under the

chapter 11 plan since the Debtors' emergence from bankruptcy has been lackluster.

 The justification for payment of the Additional Compensation to Lazard in the

nature of a fee enhancement is simply lacking of substance.  There is an insufficient

record to justify the 60% bonus requested by Lazard.

**II. ASSUMING, ARGUENDO, THAT THE BANKRUPTCY COURT ERRED
IN TREATING THE LAZARD REQUEST FOR ADDITIONAL
COMPENSATION AS A FEE ENHANCEMENT, THE REQUEST STILL
FAILS UNDER A REASONABLENESS ANALYSIS UNDER SECTION 330
OF THE BANKRUPTY CODE.**

 In contexts other than fee enhancements, Section 330(a) specifies that the

reviewing court look at certain criteria when considering the reasonableness of fees

requested.  11 U.S.C.§ 330(a).  As Lazard points out, one of the factors in determining

the reasonableness of a professional's fees is the customary compensation charged by

comparably skilled practitioners in non-bankruptcy cases.  See 11 U.S.C. § 330(a)(3)(F).

Lazard asserts that in the Second Circuit, this factor - the market-based approach - is the

most important factor in the analysis of reasonableness.  (Appellants' Brief, 13-14.)

Contrary to Appellants' attempts to grant nearly singular weight to the criteria of

"whether the compensation is reasonable based on the customary compensation charged by comparable skilled practitioners in cases other than cases under this title," it is but one of the criteria the Bankruptcy Court should appropriately consider under Section 330. See 11 U.S.C. § 330(a)(3)(F).

Lazard further claims that it "presented substantial and undisputed evidence regarding the market rate for completion fees in comparable chapter 11 cases." (Appellants' Brief, 17.)  However, Lazard failed to provide any relevant or reliable evidence which would allow the Court, in performing a market analysis, to conclude that its request was reasonable in comparison to sufficiently analogous cases.

**A.    Lazard's Request Was Not Made In Accordance With Market Norms.**

Due to Lazard's failure to define even the most basic parameters of entitlement at the time of its retention, it is apparent that Lazard's request for Additional Compensation is not in accordance with market norms.  When compared to the market compensation structure of other financial advisor fees in the industry, Lazard's approach to compensation in the Chapter 11 Cases is unique.[5]  The Bankruptcy Court examined several cases offered by Appellants as analogous to its situation and found each to be readily distinguishable.  Accordingly, the record supports the conclusion that the Bankruptcy Court properly considered market norms and in its discretion denied Lazard's request for Additional Compensation.

**B.    The Bankruptcy Court Properly Distinguished the *XO Communication* Cases.**

The *XO Communication* cases (referred to by the Bankruptcy Court and Appellants as the *Howard* cases) are cited by Appellants for the proposition that

---

[5] It is this same failure, fatal to its position, that Lazard's request for Additional Compensation should be treated as something other than a fee enhancement or bonus.

quantification of Additional Compensation which is deferred until the conclusion of the engagement is nonetheless allowable under the Bankruptcy Code when reasonable.  In re XO Communications, Inc., 323 B.R. 330 (Bankr. S.D.N.Y. 2005); aff'd Houlihan Lokey Howard & Zukin Capital v. High River Ltd. P'ship, 369 B.R. 111 (S.D.N.Y. 2007). Notwithstanding Appellants quarrel with the Bankruptcy Court concerning their view that it created a new and heightened standard of review, it would appear that Appellants seek to create their own standard of review through their reading of the *XO Communication* cases.  Regardless of the interpretation offered by Appellants for the first time in the Appellants' Brief, the Bankruptcy Court properly concluded that the facts underlying the *XO Communication* decisions are distinguishable from Lazard's request for Additional Compensation.

As the Bankruptcy Court concisely explained, the engagement letter signed by Houlihan Lokey Howard & Zukin Capital ("Houlihan") in *XO Communications* set out that in the event that certain restructuring "transactions"[6] occurred the advisors would "also be entitled to receive a transaction fee calculated as a percentage of XO's

---

[6] In fact, a qualifying "Transaction" was defined in Houlihan's engagement letter as:

> "…any transaction or series of transactions that effects material amendments to, or other material changes in, any of the Debtor's outstanding on-balance sheet indebtedness as of the date hereof (excluding any such indebtedness held by subsidiaries or affiliates of the Debtor as of the date hereof) plus accrued and accreted interest thereon (such indebtedness, with such exclusion, the 'Company Debt') and/or that effects material amendments to, or other material changes in, any of the Company's outstanding redeemable preferred stock as of the date hereof plus any accrued and accreted dividends (the 'Company Preferred'), including without limitation … any other transaction in which the requisite consents to a reorganization or restructuring are obtained either out-of-court or pursuant to a Chapter 11 plan of reorganization or restructuring plan confirmed pursuant to Section 1129(b) of the Bankruptcy Code (collectively a 'Plan')." Id at 334-335.

outstanding debt, reduced by the total amount of monthly fees it was previously paid".
<u>See</u> Bankr. Ct. Dec., 28-29.

In contrast, in the instant case as the Bankruptcy Court explained "neither the Lazard Final Retention Order or the FTI Retention Order references or incorporates by reference, any objective guidelines to determine whether they are entitled to a success, completion fee much less how much the fee should be.  <u>See</u> Bankr. Ct. Dec., 29.

The unique facts underlying the *XO Communications* decisions, particularly the transaction specific restructuring fee for Houlihan, are completely distinguishable from the instant request for Additional Compensation by the Lazard, which represented the Committee in a general advisory role.  Perhaps that is why the *XO Communications* cases were <u>not</u> included by Lazard for consideration by the Committee in the benchmarking analysis it now seeks to offer into evidence.  In fact, no comparable case was offered by Lazard where, as here, there was a complete lack of disclosure at the time of retention of any terms and conditions concerning a potential amount or even grounds for entitlement of Additional Compensation.  <u>See</u> Evidentiary Hearing, Tr. 56:13 – 56:24.

C. **Lazard's Analysis Is Fundamentally Flawed As It Is Allegedly Based Solely Upon A Comparison Of The Total Debt Of Northwest And Other Bankrupt Companies, A Criterion From Which The Market Rate Cannot Be Established.**

The record clearly shows that Lazard's benchmarking analysis suffers from three fatal flaws in regard to its selection of chapter 11 comparison cases: (1) the single criterion for selecting other bankruptcy cases that Lazard asserts it utilized – the debtor's total debt – is not determinative of the market rate; (2) Lazard's analysis did not, in fact, utilize cases where the total debt is comparable to Northwest's debt; and (3) the analysis Lazard proffered to the Court is comprised of incomplete, skewed, and otherwise

unreliable data. Additionally, Lazard failed to consider the actual number of hours it worked on this case in determining the reasonableness of its fee. As a result of its flawed analysis, Lazard failed to satisfy its burden of proof on the reasonableness of its request for a completion fee; accordingly, the Court properly denied its request.

Lazard's first error in its "benchmarking analysis" was basing its selection of chapter 11 cases with which it compared the Debtors' Chapter 11 Cases solely on the amount of total debt in each case. Lazard first presented its analysis to the Committee in January 2007, and to the Debtors and the Court in July 2007. See Evidentiary Hearing, AFA Exhibit 1. Lazard conceded that in each instance, the only instructions given to those employees creating the analyses was to include cases of a "similar size and magnitude to Northwest Airlines" based on the companies' total debt. (Evidentiary Hearing, Tr. 33:19, 77:16-77:17; Evidentiary Hearing, Lazard Exhibit 1).

However, Lazard offered no evidentiary support for its assumption that the sole criterion of total debt is directly or in any other way correlated to the appropriate market rate fee of a Committee's financial advisor. Indeed, David Kurtz, Lazard's managing director and only witness, testified that total debt is not the only relevant factor but that there are "many different criteria" that are material to establishing an advisor's compensation. (Evidentiary Hearing, Tr. 77:20). He also acknowledged that "cases vary significantly from one case to another." (Evidentiary Hearing, Tr. 74:20). Mr. Kurtz was not familiar with all the circumstances surrounding the bankruptcies used in Lazard's benchmarking analysis. See Evidentiary Hearing, Tr. 77:23. Indeed, he had no idea how the advisor's fees in these cases were established, and did not know if total debt was considered or if the complexities or peculiarities of the cases were used to determine the

appropriate fee.    See Evidentiary Hearing, Tr. 77:8-77:23.    Thus, the "size and magnitude" of the cases cited in Lazard's assessment may have had absolutely no bearing on the "size and magnitude" of the fee; instead they may very well have been approved because the bankruptcy, for example, involved a significant number of complicated transactions.    Absent such detailed and specific information, Lazard cannot show that there is any relationship between the single consideration of total debt and an appropriate market rate fee.

Lazard itself notes that "the best evidence for the market rate for a restructuring advisor's fees is the rate charged by other restructuring advisors *in similarly complex* chapter 11 cases.    (Appellants' Brief, 17 (emphasis added).)  Lazard could have easily determined the relative complexity of bankruptcy cases by considering the number of hours the investment banking firms expended in representing the Committees.    This measure of effort presumably mirrors the difficulty, or complexity, of the case.    In fact, the Court's rules require Lazard to submit a record of the hours it has worked.[7]   This requirement reflects the Court's belief that the amount of labor performed must be considered in evaluating the merits of a fee application.    At the very least, Lazard should have also used this measure to select cases to establish the market rate.  Lazard's failure to do so results in a "benchmarking analysis" that holds little or no relevance to the determination of reasonableness required in these Chapter 11 Cases.

---

[7] Administrative Order of the U.S. Bankruptcy Court for the Southern District of New York, Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Case, April 19, 1995.  See also U.S. Trustee Fee Guidelines: Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses filed under 11 U.S.C. § 330 (Appendix A to 28 C.F.R. § 58).

D.    **Even Assuming That The Market Rate Can be Derived From The Fees Awarded In Cases Where The Total Debt Is Comparable To Northwest's Debt, Lazard Does Not Base Its Analysis On Such Cases.**

Despite Lazard's assertion that, in its analysis, it selected cases of a "similar size and magnitude to Northwest Airlines" based on the companies' total debt, the record illustrates otherwise.    Lazard's analysis presented to the Creditors Committee and Northwest is derived from eight companies, of which five have total debt within a range of 17% to 35% of Northwest's $12.8 billion in liabilities.  <u>See</u> Evidentiary Hearing Lazard Exhibit 1.  In the remaining three bankruptcies, the total debt exceeds that of Northwest by 60% to 135%.  Cases in which the total debt is within $3 billion to $4 billion of Northwest's liabilities could possibly be considered of a similar size.  The same, however, could not be said for bankruptcies where the gap is $17.34 billion, $11.32 billion and $7.69 billion, as is the case with WorldCom, United and Delta, respectively. <u>Id.</u>

In the only evidence provided to the Court, Lazard presented even more skewed data.  Its analysis is limited to six other bankruptcies, three of which are WorldCom, United and Delta.  (Lazard's Response To Objections To Fee Application, Exhibit B.) As a result, half of its assessment is based upon information that does not meet the single criterion that Lazard purportedly used to select comparators.  In its submission, Lazard concealed these gross discrepancies by omitting any reference to its reliance on total debt or indicating the respective total debt amounts in the listed bankruptcies.  Instead, it claimed without explanation that these bankruptcies were "similar" to the Northwest case.  (Kurtz Dec. ¶ 11, Ex. B.)

During the hearing, Mr. Kurtz did not know why a bankrupt debtor, such as WorldCom, whose total debt was significantly larger than that of Northwest, was

included in Lazard's analysis.  <u>See</u> Evidentiary Hearing, Tr. 107:19.  Obviously, his colleagues did not follow his directive to select cases of a similar size and magnitude. Moreover, Mr. Kurtz did not know what other factors they may have considered in preparing Lazard's report.  <u>See</u> Evidentiary Hearing, Tr. 106:14-109:6.

Because Lazard failed to base its selection of comparison cases on the criterion of total debt, a criterion that Lazard itself selected, the Court properly found that the cases were not sufficiently analogous to support Lazard's comparisons.

**E.    Lazard's Analysis Is Further Flawed By Its Reliance On Cases That Are Incomplete Or Not Representative Of The Market Rate.**

Lazard's selection of comparison cases suffers even more severe flaws, as it includes cases that are still pending, as well as cases which involve atypical professional fees.  In the analysis submitted to the Committee, Lazard did not limit its assessment to completed cases in which actual fees had been awarded.   Rather, of the eight bankruptcies listed, four were still in progress, leaving Lazard to "estimate" the amount of fees the financial advisors would ultimately receive.  Mr. Kurtz acknowledged that using "actual data as opposed to hypothetical data" is a "better methodology." (Evidentiary Hearing, Tr.  105:15-105:19).

In its analyses provided to the Committee, the Debtors and the Court, Lazard showed for each listed case the official committee's advisor fee as a percentage of the debtors' advisor fee.  In the submission to the Committee, the compensation of the official committee's advisor in two of the cases exceeded those of the respective debtors. Mr. Kurtz stated that he could not recall another case where this imbalance existed.  <u>See</u>

Evidentiary Hearing, Tr. 80:16-80:17.[8]  Similarly, in the evidence proffered to the Court, two of the six cases used in Lazard's analysis grossly distort the mean and median of the fee comparisons.  In WorldCom and Enron, the official committee consultant received 90.8% and 174.5% respectively, of the fees awarded to the debtors' investment bankers.

Thus, four of the six bankrupties that comprise Lazard's analysis are not at all probative of the market rate.  In United and Delta, the total debt far exceeds that of the Debtors' Chapter 11 Cases, <u>see</u> Evidentiary Hearing, Lazard Trial Exhibit 1;  in Enron, the relationship between the fees of the debtor's advisor and the official committee's advisor are extraordinary if not unprecedented; and in WorldCom the case suffers from both defects – Northwest's and WorldCom's debt are not comparable and the relationship of advisory fees is significantly skewed.  Lazard cannot reasonably expect the court to derive the market rate from the two cases that remain, particularly when the relevance of the underlying criterion - total debt - has not been established.

**F.      While Lazard May Be Compensated On An Individual Assignment Basis, It Still Must Demonstrate That Its Fees When Calculated On An Hourly Basis Are Reasonable.**

Finally, Lazard ignores a critical measure of comparison in its analysis: hourly rates.  A simple comparison of the hourly rate Lazard would receive if its request is granted with the hourly rate of the other professionals in the Debtors' Chapter 11 Cases is

---

[8] There is no evidence that the Committee conducted its own analysis to determine the appropriate market  rate.  Thus, Lazard's contention that the Committee was "best able to judge Lazard's performance" since it had "before it relevant market data" is without any factual support.  (Hearing Tr. (Kurtz) 6.)  Northwest's agreement not to contest Lazard's completion fee was also based upon the same flawed information.  Accordingly, the Court should not credit the position of either the Committee or the Debtor in deciding the reasonableness of the fee.

highly illustrative of the unreasonableness of Lazard's request for Additional Compensation.[9]

Based upon the total number of hours worked and the compensation paid to date without the requested completion fee, Lazard's pay equates to an hourly rate of $876. Of the 6,227 hours of work Lazard recorded, 3,656.88 hours or 58.7% was performed by associates and analysts, positions which are held by individuals who have little or no experience. Other than stating that investment bankers operate in a rarefied atmosphere where hourly rates do not exist, Mr. Kurtz provided no explanation to justify effectively charging the Debtors' estates for the work of its most junior employees at a rate higher than the carrier's most experienced bankruptcy counsel. The highest hourly billing rate in this case, $850, was charged by three partners of Cadwalader, Wickersham & Taft LLP, who have been practicing between thirty-two and forty years.

If the completion fee of $3.25 million is blended into the hourly rate for all the work Lazard performed, the rate rises to $1,398 an hour. The value of an associate's and analyst's time would now outstrip Cadwalader's highest billing rate by 65%. Lazard cannot expect the Bankruptcy Court in the context of the Chapter 11 Cases to approve an application that would sanction such a patently unreasonable rate of pay.

---

[9] Even though the Court requires professionals to record the number of hours it has worked and to describe the work performed, Lazard insists that this information is irrelevant to the setting of its compensation. According to Mr. Kurtz, Lazard is not paid an hourly rate but is compensated on an "individual assignment basis. See Evidentiary Hearing, Tr. 14:14. He did concede that there may be the unusual case where the fee requested bears an unreasonable relationship to the time worked. He could not identify the precise point at which Lazard's pay, calculated on an hourly basis, would be considered unacceptable.

### III.    THE BANKRUPTCY COURT'S DECISION STRENGTHENS BANKRUPTCY CODE POLICY

Appellants argue that Bankruptcy Court's Decision frustrates Bankruptcy Code policy on the following two grounds: (i) that the result goes against the policy of compensating bankruptcy professionals the same as non-bankruptcy professionals and (ii) that the Court is implementing a rule that forces official committees to approve the entire fee at the beginning  ("get-it-up-front-or-don't-get-it-at-all" approach).

Contrary to the position taken by the Appellants, the result in the Bankruptcy Court does keep bankruptcy professionals on even keel with non-bankruptcy professionals.  Lazard failed to follow market norms and define the parameters of any later request for success or completion fees.  The approach adopted by the Bankruptcy Court simply forces an estate professional to draft a better retention application and disclose the terms and conditions of entitlement to additional contingent compensation that it may later wish to claim.  Such a policy runs directly in line with one of the bedrock principles of chapter 11, i.e., full and complete disclosure.  See Bankruptcy Court Decision at 15. All parties in interest, including official committees and debtors, would be well served by the policy underlying the Bankruptcy Court Decision, which requires more disclosure concerning compensation rates and informs the interested parties of exactly what the financial ramifications will be when the estate hires a professional.

## CONCLUSION

WHEREFORE, Appellees respectfully submit that that Appellants have failed to establish that they entitled to the Additional Compensation and requests that this Court affirm the Bankruptcy Court Decision denying Lazard its request for Additional Compensation.

Dated: New York, New York
July 16, 2008

KLESTADT & WINTERS, LLP
*Attorneys for CarVal Investors, LLC*

By    /s/Sean C. Southard
        Sean C. Southard (SS-2825)
292 Madison Avenue, 17th Floor
New York, New York 10017
Telephone no. (212) 972-3000

GUERRIERI, EDMOND, CLAYMAN &
BARTOS, P.C.
*Attorneys for Association of Flight
Attendants-CWA, AFL-CIO*

By:    /s/Robert S. Clayman
        Robert S. Clayman
1625 Massachusetts Avenue, N.W., Suite
700 Washington, DC  20036
Telephone: (212) 624-7400

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:                                                    :
                                                          :   Chapter 11
NORTHWEST AIRLINES CORPORATION,                           :
et al.                                                    :   Case No. 05-17930 (ALG)
                                                          :
                                    Debtors.              :   Jointly Administered
----------------------------------------------------------------x
LAZARD FRERES & CO., LLC,                                 :
                                                          :   District Court
                                    Appellant,            :
v.                                                        :   Case No. 08–CV03456 (NRB)
                                                          :
DIANA G. ADAMS, United States Trustee;                    :
CARVAL INVESTORS, LLC; and                                :
ASSOCIATION OF FLIGHT ATTENDANTS -                        :
CWA, AFL-CIO,                                             :
                                                          :
                                                          :
                                    Appellees.            :
----------------------------------------------------------------x
OFFICIAL COMMITTEE OF UNSECURED                           :
CREDITORS OF NORTHWEST AIRLINES                           :
CORPORATION,                                              :
                                                          :   District Court
                                    Appellant,            :
v.                                                        :   Case No. 08–CV03456 (NRB)
                                                          :
DIANA G. ADAMS, United States Trustee;                    :
CARVAL INVESTORS, LLC; and                                :
ASSOCIATION OF FLIGHT ATTENDANTS -                        :
CWA, AFL-CIO,                                             :
                                                          :
                                    Appellees.            :
----------------------------------------------------------------x

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and complete copy of the Joint Brief In Opposition To

Appeals From Decision Of The Bankruptcy Court Denying Additional Compensation to be

served by hand delivery upon the following parties on the date hereof:

Brian Shoichi Masumoto
Office of the United States Trustee
33 Whitehall Street, 21st Floor
New York, NY 10004

Scott L. Hazan
Otterbourg, Steindler, Houston & Rosen,
P.C.
230 Park Avenue
New York, NY 10169

Philip G. Barber
Alan W. Kornberg
Paul, Weiss, Rifkind, Wharton & Garrison
LLP
1285 Avenue of the Americas
New York, NY 10019

Honorable Naomi Reice Buchwald
United States District Judge, SDNY
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St., Room 2270
New York, NY 10007

Dated: New York, New York
July 16, 2008

                                                 /s/Sean C. Southard
                                                Sean C. Southard