IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

In re Northwest Airlines Corporation *et al.*, Debtors

_____

Civil Nos. 08-03456 (NRB) and 08-0350 (NRB)

_____

Lazard Frères & Co. LLC,

Appellant,

v.

Diana G. Adams, United States Trustee
Carval Investors, LLC; and
Association of Flight Attendants- CWA, AFL-CIO,

Appellees.

_____

Official Committee of Unsecured Creditors of Northwest Airlines Corporation

Appellant,

v.

Diana G. Adams, United States Trustee
Carval Investors, LLC; and
Association of Flight Attendants- CWA, AFL-CIO

Appellees.

_____

On Appeal from the United States Bankruptcy Court
for the Southern District of New York

_____

BRIEF OF APPELLEE UNITED STATES TRUSTEE

Brian S. Masumoto
Trial Attorney

Linda Riffkin
Assistant United States Trustee

Office of the United States Trustee
33 Whitehall Street, 21st Floor
New York, NY 10004
Phone: (212) 510-0500
Facsimile: (212) 668-2255

### TABLE OF CONTENTS

**TABLE OF CONTENTS**                                                                i

**TABLE OF AUTHORITIES**                                                             ii

**I.  STATEMENT OF JURISDICTION**                                                    1

**II.  STANDARD OF REVIEW**                                                          1

**III.  STATEMENT OF ISSUE PRESENTED**                                              1

**IV.  STATEMENT OF THE CASE**                                                       2

    A.    Statutory Framework                                     2

    B.    Procedural and Factual History                          4

        1.  The Chapter 11 Cases                             4

        2.  Appellant's Retention Application and Orders     5

        3.  The Hearing on Appellant's Request for a Completion Fee     8

        4.  The Bankruptcy Court's Decision                  10

**VII.  SUMMARY OF ARGUMENT**                                                        13

**VIII.  ARGUMENT**                                                                  13

    **The Bankruptcy Court Did Not Abuse Its Discretion in Denying Lazard's Request for a Completion or Success Fee**     13

    A.    The bankruptcy court properly reviewed Lazard's fee enhancement request for "reasonable" under 11 U.S.C. § 330     13

        1.  Section 330(a)(3) is the Proper Standard of Review     14

        2.  Bankruptcy Courts have Substantial Discretion in Awarding Fees under 11 U.S.C. § 330(a)     14

        3.  Lazard's Argument that Primacy Be Given to § 330(a)(3)(E) to the Exclusion of all Other Factors Must Be Rejected     17

        4.  The Bankruptcy Court Properly Distinguished Lazard's Reliance upon *Howard* in Support of Lazard's Request for a Completion Fee     20

5.  Lazard Failed to Adduce Evidence of "Truly
    Exception Results" Meriting an Upward Adjustment
    of the Lodestar                                                23

**IX.  CONCLUSION**                                                25

**STATUTORY ADDENDUM**                                            32

**AFFIRMATION OF SERVICE**                                        39

## TABLE OF AUTHORITIES

**CASES**                                                        **PAGE**

Bank Brussels Lambert v. Coan (In re AroChem Corp.), 176 F.3d 610, 620
(2d Cir. 1999)                                                      1

Blanchard v. Bergeron, 489 U.S. 87 (1989)                          16

Blum v. Stenson, 465 U.S. 886, 898-901 (1984)                 11, 16, 23

City of Burlington v. Dague, 112 S.Ct. 2638 (1992)                 16

Commercial Fin. Servs., Inc. v. Houlihan Lokey (In re Commercial
Fin. Servs., Inc.), 427 F.3d 804, 811 (10th Cir. 2005)          15, 17

Connolly v. Harris Trust Co. Of Cal. (In re MiniScribe), 309 F.3d 1234, 1243
(10th Cir. 2002)                                                   16

Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Charles N. Wooten, Ltd.
(Matter of Evangeline Refining Co.), 890 F.2d 1312, 1326 (5th Cir.1989)    16

Daniels v. Barron (In re Barron), 325 F.3d 690, 692 -93 (5th Cir. 2003)    14

Farrah v. Hobby, 113 S.Ct. 566 (1992)                             16

Harris v. Dublin (In re U-Can Rent, Inc.), 262 B.R. 147, 151
(Bankr. M.D. Ga. 2001)                                            20

Hensley v. Eckerhart, 461 U.S. 424 (1983)                         16

Houlihan Lokey Howard & Zukin Cap. v. Unsecured Liquidating Trust,
427 F.3d 804, 811 (10th Cir. 2005)                                22

Howard & Zukin Capital v. High River Ltd. P'ship, 369 B.R. 111, 113
(S.D.N.Y. 2007).                                                19, 21

In re Adept Bus. Solutions, Inc. No. 02-11289 (Bankr. S.D.N.Y.)                        19

In re Ames Dept. Stores, Inc., 76 F.3.d 66, 71 (2d Cir. 1996)                          20

In re Babcock & Wilcox Company, 526 F.3d 824 (5th Cir. 2008)                            1

In re Brous, 370 B.R. 563, 569 (Bankr. S.D.N.Y. 2007)                               16, 23

In re Busy Beaver Building Centers, Inc., 19 F.3d 833, 840 (3rd Cir. 1994)             14

In re Cahill, 428 F.3d 536, 539 (5th Cir. 2006)                                   14, 15, 17

In re Castillo, 297 F.3d 940, 950 (9th Cir. 2002)                                       4

In re Columbia Gas Sys., Inc., 33 F.3d 294, 296 (3d Cir. 1994)                          4

In re Delta Airlines, No. 05-17923 (Bankr. S.D.N.Y.)                                   19

In re El Paso Ref., Inc., 257 B.R. 809, 833 (Bankr. W.D. Tex. 2000)                    16

In re Juanita Collida and Joe Collida, 270 B.R. 209, 214 (Bankr. S.D. Tx. 2001)       18

In re McLean Industries, 30 F.3d 385, 387 (2d Cir. 1994)                                1

In re Michael/Rebecca Williams, 384 B.R. 191, 194-95 (Bankr. N.D.Ohio, 2007)          20

In re Mirant Corp.354 B.R. 113 (Bankr. N.D.Tex. 2006)                                  19

In re Molten Metal Technology, Inc., 345 B.R. 26 (Bankr. D.Mass. 2006)                 24

In re Northwest Airlines Corp. et al., 382 B.R. 632 (Bankr. S.D.N.Y. 2008)         Passim

In re Northwest Airlines Corp. No. 05-17930 (Bankr. S.D.N.Y.)                           1

In re NorthWestern Corp. 344 B.R. 40 (D.Del. 2006)                                     19

In re Pettibone Corp., 74 B.R. 293, 299 - 300 (Bankr. N.D. Ill. 1987)               16, 24

In re Teraforce Tech. Corp., 347 B.R. 838, 846 B 847 (Bankr. N.D.
Tex. 2006)                                                                            15

In re UAL Corp. No. 01-48191 (Bankr. N.D. Ill.)                                        19

Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974)                  15

Lamie v. United States Trustee, 540 U.S. 526, 534 (2004)                               17

Matter of First Colonial Corp. of Am., 544 F.2d 1291 (5th Cir.1977),
cert. denied, 431 U.S. 904 (1977)                                              15

Miller Buckfire & Co., LLC v. Citation Corp., 493 F.3d 1313, 1318
(11th Cir. 2007)                                                           17, 22

Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S.
546, 566 (1986) (*Delaware* I)                                          11, 16, 23

Pennsylvania v. Delaware Valley Citizens Council, 483 U.S.
711 (1987) (*Delaware II*)                                                      16

United States Trustee v. Revco D.S., Inc. (In re Revco D.S., Inc.),
898 F.2d 498, 499 (6th Cir. 1990)                                               4

**STATUTES**                                                               **PAGE**

11 U.S.C. § 307                                                             2, 4

11 U.S.C. § 328(a)                                                       1, 3, 5

11 U.S.C. § 330(a)                                                      1, 3, 14

11 U.S.C. § 330(a)(1)(A) and (B)                                               3

11 U.S.C. § 330(a)(2)                                                    2, 3, 4

11 U.S.C. § 330(a)(3)                                                      2, 17

11 U.S.C. § 330(a)(3)(E)                                                       2

11 U.S.C. § 330(a)(4)                                                          3

11 U.S.C. § 503(A)                                                             2

11 U.S.C. § 503(b)(3)                                                          5

11 U.S.C. § 507(a)(1)                                                          2

11 U.S.C. § 1101, et seq.                                                      4

11 U.S.C. § 1102                                                            2, 5

11 U.S.C. § 1103(a)                                                            2

28 U.S.C. § 158(c)(2)                                                          1

28 U.S.C. §§ 581 - 589                                           3

28 U.S.C. § 586(a)(3)(A)                                       2, 4


**<u>RULES</u>**                                                 **<u>PAGE</u>**

28 C.F.R. Pt. 58, App. A (1996)                                 4

Fed. R. Bankr. P. 8002                                          1

## STATEMENT OF JURISDICTION

The United States Bankruptcy Court for the Southern District of New York had jurisdiction over the Northwest Airlines Corporation chapter 11 bankruptcy cases under 28 U.S.C. § 157(a) and (b) and 1334(a).  On February 29, 2008, the bankruptcy court entered an order ("Order") approving a final fee award of $5,455,645 to Lazard Frères & Co. ("Lazard"), financial advisors to the Official Committee of Unsecured Creditors ("Committee").  [P-15; ECF 8103 and P-16, ECF 8105].[1]  The Order denied Lazard's request to for a 60% "success" or "completion" fee of $3,250,000, because Lazard had failed not only to secure pre-approval of the fee but also to meet its burden of demonstrating that enhancement was warranted under 11 U.S.C. § 330(a).  *Id.*  Lazard and the Committee appealed the Order by notice of appeal filed under 28 U.S.C. § 158(c)(2) and Fed. R. Bankr. P. 8002 on March 10, 2008.  [P-17; ECF Doc. No. 8123].  This Court has jurisdiction over this appeal under 28 U.S.C. § 158(a)(1).

## STANDARD OF REVIEW

A bankruptcy court's ultimate award of fees is reviewed for abuse of discretion. *In re Babcock & Wilcox Company*, 526 F.3d 824 (5th Cir. 2008).  Under this standard, an appellate court "accept[s] [the Bankruptcy Court's] factual findings unless clearly erroneous but review[s] its conclusions of law *de novo.*"  *Bank Brussels Lambert v. Coan (In re AroChem Corp.*), 176 F.3d 610, 620 (2d Cir. 1999) (*citing In re McLean Industries*, 30 F.3d 385, 387 (2d Cir. 1994)).

## STATEMENT OF ISSUE PRESENTED

Where compensation is not pre-approved under 11 U.S.C. § 328(a), a bankruptcy court may award estate professionals "reasonable compensation for actual, necessary services" under 11 U.S.C. § 330(a)(1)(A).  In determining "reasonable" compensation, a bankruptcy court may consider a non-

---

[1] "P-15" and "P-16" refers to Lazard's Designation Number of the Record on Appeal.  For convenience, this brief will cross-reference the document to the corresponding docket entry on the electronic case filing system in the bankruptcy case, *In re Northwest Airlines Corp.* No. 05-17930 (Bankr. S.D.N.Y.).

exclusive list of five "relevant factors" pertaining to the "nature, the extent and the value" of the services rendered, including "the customary compensation charged by comparably skilled practitioners" in non-bankruptcy cases. 11 U.S.C. § 330(a)(3)(E).[2] A professional bears the burden of proving that its fees are both necessary and "reasonable." If it fails to do so, the bankruptcy court may "award compensation that is less than the amount of compensation that is requested . . . ." 11 U.S.C. § 330(a)(2). Bankruptcy courts may enhance fees calculated under the lodestar method, which incorporates many of the factors prescribed under 11 U.S.C. § 330(a)(3), only if a professional adduces evidence of "truly exceptional results." Lazard failed to meet its burden of proving that its work merited a 60% bonus. Given Lazard's failure to meet its burden of proof, did the bankruptcy court abuse its discretion in declining to enhance its fees?

## STATEMENT OF THE CASE

### A.    Statutory Framework

The Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, regulates the retention, compensation and payment of bankruptcy professionals, such as attorneys, accountants and financial advisors, in chapter 11 and 7 cases. It grants significant discretion to bankruptcy courts in calculating reasonable professional fees in order to protect estate assets and to promote the integrity of the bankruptcy system. The United States Trustee has standing to object to bankruptcy professional fee applications in chapter 11 and 7 cases. 28 U.S.C. § 586(a)(3)(A); 11 U.S.C. §§ 307 and 330(a)(2).

Section 1102(a) authorizes the United States Trustee to appoint one or more unsecured creditors' committees. A creditors' committee may hire bankruptcy professionals to assist it in fulfilling its responsibilities "with the court's approval . . . ." 11 U.S.C. § 1103. These professionals, as well as those employed by the debtor, are entitled to first priority payment under 11 U.S.C. §§ 503(a) and 507(a)(1) ahead of general unsecured creditors.

---

[2] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109-8, 119 Stat 23 (2005) ("BAPCPA"), became effective on October 17, 2005. This appeal involves 11 U.S.C. § 330(a) in its pre-amendment form.

2

The Bankruptcy Code provides two mechanisms for compensating committee professionals. Section 328(a), which is inapplicable here, authorizes a committee to employ professionals "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis . . . ." 11 U.S.C. § 328(a). Section 328(a) permits a bankruptcy court subsequently to award different compensation only if the pre-approved "terms and conditions of employment prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions . . . ."

Section 330(a) authorizes a bankruptcy court to pay committee professionals "reasonable" compensation for their "actual and necessary services." 11 U.S.C. § 330(a)(1)(A). The court may authorize reimbursement of the professionals' "actual" expenses if they are "necessary." 11 U.S.C. § 330(a)(1)(B). Section 330's requirements regarding reasonable compensation and reimbursement of necessary expenses are particularly important in the context of a creditors' committee, because its professionals' fees are paid by the bankruptcy estate, not the committee members. 11 U.S.C. § 503(b)(3).

Bankruptcy professionals bear the burden of demonstrating their entitlement to fees and expenses under 11 U.S.C. § 330(a). If a professional fails to meet his burden of proof under 11 U.S.C. § 330(a), the bankruptcy court, with or without an objection from a party in interest, may award compensation "less than the amount of compensation that is requested . . . ." 11 U.S.C. § 330(a)(2). Moreover, section 330(a)(4) prohibits the bankruptcy court from awarding compensation for "unnecessary duplication of services . . . or . . . services that were not . . . reasonably likely to benefit the debtor's estate . . . or . . . necessary to the administration of the estate . . . ." 11 U.S.C. § 330(a)(4). Section 331 authorizes bankruptcy professionals to seek interim compensation on the same basis as under section 330(a).

United States Trustees are officials of the Department of Justice appointed by the Attorney General to supervise the administration of bankruptcy cases and trustees. *See* 28 U.S.C. §§ 581-589

(specifying the powers and duties of United States Trustees).[3]  Congress has expressly authorized United

States Trustees to comment upon and object to fee applications filed by bankruptcy professionals.  28

U.S.C. § 586(a)(3)(A); 11 U.S.C. §§ 307 and 330(a)(2).  The United States Trustees have issued

guidelines regarding bankruptcy professional fee applications in chapter 11 and 7 cases. 28 C.F.R. Pt. 58,

App. A (1996).

     **B.**     **Procedural and Factual History**

     **1.  The Chapter 11 Cases**

On September 14, 2005, Northwest Airlines Corporation and twelve of its direct and indirect

subsidiaries ("Northwest" or "Debtors") filed petitions under chapter 11 of the Bankruptcy Code, 11

U.S.C. § 1101, *et seq.*  The Bankruptcy Court entered an order directing the joint administration of the

cases on September 14, 2005.  [ECF Doc. No. 5.]  At the time of the filing, Northwest operated the

world's fourth largest airline (as measured by revenue passenger miles).  [AJDRA ¶ 1, p. 3, ¶ 7; ECF

Doc. No. 35][4]

---

   [3]*See also In re Columbia Gas Sys., Inc.*, 33 F.3d 294, 296 (3d Cir. 1994) (United States Trustees oversee the bankruptcy process, protect the public interest, and ensure that bankruptcy cases are conducted according to law) (*citing* H.R. Rep. No. 95-595, 109 (1977)); *United States Trustee v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 499 (6th Cir. 1990) ("[t]he United States trustee, an officer of the Executive Branch, represents . . .  [the] public interest . . . ."); *In re Castillo*, 297 F.3d 940, 950 (9th Cir. 2002) ("The United States Trustee is the 'watchdog' of the bankruptcy system . . .  charged with preventing fraud and abuse and with 'fill[ing] the vacuum caused by possible creditor inactivity . . . .").

   [4]"AJDRA" refers to the Appellees' [CarVal Investors, Inc. and Association of FlightAttendants – CWA, AFL-CIO] Joint Designation of Additional Items for Inclusion in the Record on Appeal."

### 2. Lazard's Retention Application and Orders

On September 30, 2005, the United States Trustee appointed the Committee pursuant to Section 1102(a) of the Bankruptcy Code.[5]  [ECF Doc. No. 444].  After negotiating with Lazard for several weeks over the terms of its employment, the Committee filed an application ("Application") to retain Lazard as one of its two financial advisors on November 8, 2005. [ECF Doc. No. 948].  *Order* at 5.  Under the Application, which memorialized the parties' agreement, the Committee proposed to retain Lazard on specified, pre-approved terms under 11 U.S.C. § 328(a).  *Id*.  Specifically, Lazard agreed to accept a flat "Monthly Advisory Fee" of $275,000 plus expenses, and the Committee and Lazard agreed to defer consideration of Larzard's "entitlement, if any, to an additional 'success' or 'completion' fee to the latter part of the Debtors' Chapter 11 case . . . ."  *Id*.  The Application, at ¶ 18(c), provided:

> (c)    Other Fees. It is agreed that all matters relating to Lazard Frères' *entitlement, if any,* to an additional "success" or "completion" fee *shall be deferred until the latter part of the Company's chapter 11 case*, and that Lazard Frères shall be required to comply with the applicable notice procedures required by the Court and the Office of the U.S. Trustee.

*Id*. (emphasis added).

On November 29, 2005, the bankruptcy court entered an interim order authorizing the Committee to retain Lazard as a financial advisor, retroactive through October 6, 2005 (the "Interim Retention Order"). [AJDRA ¶10; ECF Doc. 1272].   The Interim Retention Order affirmed Lazard's agreement with the Committee insofar as it did not pre-approve a completion or success fee.  It authorized Lazard to be compensated only to the extent of its Monthly Advisory Fee and expenses, subject to challenge under 11 U.S.C. § 328(a).  *Id*. at 2-3.  The Interim Retention Order preserved the United States Trustee's right to object to any interim or final fee applications filed by Lazard on any grounds, including, without limitation, the reasonableness standard of 11 U.S.C. § 330, the bankruptcy

---

[5]The United States Trustee reprints the principal, pre-BAPCPA statutes it relies upon, 11 U.S.C. §§ 328, 330(a), 503, 507 and 1102 and 1103, in an addendum attached to this brief.

rules, or any local rules or orders of the court. The Interim Retention Order also required Lazard to maintain contemporaneous time records for services rendered in half-hour increments. *Id.*[6]

On July 20, 2006, the bankruptcy court entered a final order (the "Final Retention Order") employing Lazard as a financial advisor to the Committee. [P-1; ECF Doc. No. 3112]. The Final Retention Order incorporated the provisions of the Interim Retention Order. *Id.*

Neither the Application nor the Interim Retention Order nor the Final Retention Order defined goals for Lazard, such as a recapitalization, a percentage repayment for creditors or other "success," which, if met, would entitle it to a bonus. *Id.* Accordingly, nothing negotiated by the parties and approved by the bankruptcy court bound the court under 11 U.S.C. § 328(a) in determining whether Lazard was entitled to any future fee enhancement. *Id.*

On July 30, 2007, Lazard filed a final application for allowance of compensation and for reimbursement of expenses in the Debtors' cases for the period from October 6, 2005 through May 31,

---

[6]The Interim Retention Order provided:

ORDERED that to the extent accrued during this interim retention, Lazard Frères shall receive (a) its Monthly Advisory Fees as set forth in the Engagement Letter, and (b) reimbursement of Lazard Frères' expenses, which in each case shall not hereafter be subject to challenge except under the standard of review set forth in section 328(a) of the Bankruptcy Code; and it is further

ORDERED that, notwithstanding anything to the contrary set forth above, the Office of the United States Trustee retains the right to object to any interim or final fee application filed by Lazard Frères (including any request for the reimbursement of expenses) on any grounds provided for under the Bankruptcy Code (including, without limitation, the reasonableness standard provided for in section 330 thereof), the Bankruptcy Rules, or any Local Rules or Orders of this Court;

ORDERED that, notwithstanding anything to the contrary in the Bankruptcy Code, the Federal Rules of Bankruptcy Procedures, the Local Rules of this Court, any orders of this Court or any guidelines regarding submission and approval of fee applications, Lazard Frères and its professionals shall only be required to maintain contemporaneous time records for services rendered in half-hour increments . . . .

2007 (the "Final Fee Application"). The Final Fee Application sought bankruptcy court approval of Lazard's total Monthly Advisory Fees for the twenty month period from October 6, 2005 through May 31, 2007 of $5,455,645.00, reimbursement of expenses for the same period in the amount of $167,915.12 and a completion fee (the "Completion Fee Request") in the amount of $3,250,000.00 for a total compensation request of $8,873,560.12. [P-2 at 1; ECF Doc. No. 7431]. During the course of the Debtors' case, Lazard received interim payments of fees and reimbursement of expenses totaling $4,298,208.95, leaving the net amount of compensation requested in the Final Fee Application of $4,575,351.17 (which amount included Lazard's Completion Fee Request of $3,250,000).[7]

       The United States Trustee filed an objection to both FTI's and Lazard's completion fees on September 4, 2007 on the same grounds. *In re Northwest Airlines*, 382 B.R. at 637; *citing* ECF Doc. No. 7558. The United States Trustee argued that fee enhancements were not warranted in these bankruptcy cases. The United States Trustee noted that bankruptcy courts only award fee enhancements in rare circumstances in which the professionals prove that their results were exceptional and their standard hourly rates did not fairly compensate them for the services rendered. *Id.* The United States Trustee argued that Lazard, like FTI, failed to justify its entitlement to a completion fee and failed to provide any evidence that its blended hourly rate of $876 per hour did not fairly compensate Lazard for the services it rendered. *Id.*

       The Association of Flight Attendants – CWA, AFL-CIO (the "AFA") filed an objection to Lazard's Completion Fee on September 4, 2007. *In re Northwest Airlines,* 382 B.R. at 637-38, *citing* ECF Doc. No. 7566. The AFA argued that Lazard had not provided any evidence establishing its entitlement to a fee enhancement. Furthermore, the AFA argued that most of the cost savings in the bankruptcy cases came from labor concessions in which Lazard had little, or no involvement. *Id.* at 638.

---

[7]According to its Final Fee Application, during the period from October 6, 2007 through May 31, 2007, Lazard rendered 6,227.2 hours of services in connection with the Debtors' cases. [P-2, Ex. B; ECF 7431]

Carval Investors LLC ("CarVal") filed an objection to FTI's and Lazard's requests for completion fees on September 4, 2007. *In re Northwest Airlines,* 382 B.R. at 638, *citing* ECF Doc. No. 7567. CarVal argued that Lazard's retention pursuant to section 328(a) required the bankruptcy court to find that the monthly compensation agreement was improvident in light of developments not capable of being anticipated at the time Lazard's retention was approved before any success or completion fee could be granted. *Id.* CarVal argued that because no parameters for computing the success or completion fee were included in its retention application, Lazard failed to meet its burden of proof under section 328(a) and its request should therefore be denied. *Id.*

On November 2, 2007, with respect to the unopposed portion of Lazard's compensation – the pre-approved fixed monthly compensation of $275,000 per month – the bankruptcy court entered an order awarding Lazard total Monthly Advisory Fees of $5,455,645.00 and reimbursement of expenses of $167,915.12 for the period October 6, 2005 through May 31, 2007 on a final basis for a total of $5,623,560.12. [P-9 at 2; ECF Doc. No. 7749].[8]

### 3. The Hearing on Lazard's Request for a Completion Fee

On November 19, 2007, the Bankruptcy Court conducted a hearing to consider the requests for awards of completion fees from both Lazard and FTI. [P-10; ECF Doc. No. 7857].[9] At the hearing, Lazard introduced as its sole witness, David S. Kurtz, the co-head of Lazard's restructuring group. [P-10, (Kurtz) at 13:2-20; ECF Doc. No. 7857]. Mr. Kurtz testified that, in general, Lazard is compensated on an "individual assignment basis." [P-10, (Kurtz) at 14:12-14; ECF Doc. No. 7857].

---

[8]Based upon Lazard's total Monthly Advisory Fee award of $5,455,645.00 and the reported 6,227.2 hours of services rendered during the period October 6, 2005 through May 31, 2007, Lazard's average hourly rate for the services it rendered was $876.00 per hour. *In re Northwest Airlines,* 382 B.R. at 637. If Lazard's Completion Fee were added to its total Monthly Advisory Fee, its average hourly rate for the services rendered would be $1,398.00 per hour (($5,455,645 + $3,250,000 = $8,705,645) ÷ 6,227.2 hours = $1,398.00).

[9]The Bankruptcy Court had previously ruled on the non-success/completion fee portions of both FTI's and Lazard's Final Fee Applications. *See In re Northwest Airlines,* 382 B.R. at 634 and n. 1.

Lazard typically undertakes an engagement in the restructuring world (as opposed to non-restructuring assignments) on the basis of a fixed monthly fee with a completion fee at the end of the assignment. [P-10, (Kurtz) at 14:16-22; ECF Doc. No. 7857]. Mr. Kurtz testified that Lazard never seeks compensation on an hourly basis for any of its services. [P-10, (Kurtz) at 14:23-25; ECF Doc. No. 7857].

Mr. Kurtz chronicled the circumstances surrounding the retention of Lazard and FTI as financial advisors for the Committee. On October 6, 2005, Lazard and FTI negotiated an increase in the combined monthly compensation proposed by the Committee from $500,000 per month to $550,000 per month (providing Lazard with its monthly compensation of $275,000 per month). [P-10, (Kurtz) at 26:2-27:1; ECF Doc. No. 7857]. Lazard continued its discussions with the Committee regarding a completion fee after October 6, 2005, until Lazard finally accepted the Committee's reluctance to agree to a completion fee without knowing the outcome of the bankruptcy cases. [P-10, (Kurtz) at 28:2-29:25; ECF Doc. No. 7857].

After testifying regarding the circumstances surrounding Lazard's retention by the Committee, as well as the services rendered by Lazard in the bankruptcy case, Mr. Kurtz testified as to the circumstances surrounding Lazard's request for a completion fee. Mr. Kurtz testified that approximately fourteen months after the commencement of the bankruptcy case, he broached the subject of a completion fee with the chairman of the Committee during late November or early December 2006. [P-10, (Kurtz) at 30:12-31:3; ECF Doc. No. 7857] Lazard arrived at its request for a $4 million completion fee with the Committee by preparing a report [P-19; ECF Doc. No. 8154] analyzing the monthly compensation and success fees earned by financial advisors to creditors committees in other large complex cases of similar size and magnitude to the Debtors' cases. [P-10, (Kurtz) at 31:12-33:20; ECF Doc. No. 7857]. During this period in late November to early December 2006, the Committee, once again, declined to agree on a success fee at that time. [P-10, (Kurtz) at 34:3-5; ECF Doc. No. 7857].

After the Debtors' plan of reorganization was confirmed in May 2007, the Committee considered and accepted Lazard's proposal of a completion fee of $4 million. [P-10, (Kurtz) at 34:6-35:15; ECF Doc. No. 7857] Subsequent to the Committee's acceptance of Lazard's proposal of a $4 million completion fee, Lazard engaged in several negotiations with the Debtors over Lazard's request for a completion fee. Ultimately, Lazard and the Debtors agreed upon Lazard's request for a completion fee in the amount of $3,250,000. [P-10, (Kurtz) at 35:16-36-16; ECF Doc. No. 7857].

In addition to Mr. Kurtz's testimony, the record was supplemented both during the hearing and afterwards with documentary evidence, including deposition transcripts, and charts regarding various analysis of fees. Following the hearing, post-trial memoranda of law were submitted by various parties, including Lazard. [P-11; ECF Doc. No. 7913; P-12; ECF Doc. No. 7915; P-13; ECF Doc. No. 7919; P-14; ECF Doc. No. 7920].

### 4. The Bankruptcy Court's Decision

On February 29, 2008, the bankruptcy court denied Lazard's request for a completion fee. *See In re Northwest Airlines,* 382 B.R. at 652. In reaching this decision, the court determined that it had not pre-approved Lazard's fee enhancement request under 11 U.S.C. § 328(a). *In re Northwest Airlines,* 382 B.R. at 639. Furthermore, the bankruptcy court determined that Lazard's request for a success fee failed to meet the standards set forth in 11 U.S.C. § 330.

In reaching this determination, the bankruptcy court noted that the Lazard Retention Application provided that Lazard would be retained under sections 328(a) and 1103(a) and that there would not be a challenge to its Monthly Advisory Fees and requests for reimbursement of expenses, except under the standard of review under 328(a).[10] *In re Northwest Airlines,* 382 B.R. at 640. However, the court further noted that although the terms of the underlying letter engaging Lazard were incorporated into the Lazard

---

[10]The Court observed that the United States Trustee retained the right to object to any fee application filed by Lazard on any grounds provided by the Bankruptcy Code, "including without limitation, the reasonableness standard provided for in Section 330." *See In re Northwest Airlines,* 382 B.R. at 636.

Retention Order, those terms provided only that Lazard was entitled to seek a "success" or "completion" fee at some later date. *Id*. The bankruptcy court explicitly rejected Lazard's argument that its compensation agreement was pre-approved by the Court and that payment of a completion fee, reviewable only under the standards of 328(a), was ever contemplated by the Lazard Retention Order. *Id*. Accordingly, the bankruptcy court considered Lazard's Completion Fee Request under the standards set forth in section 330(a)(3) of the Bankruptcy Code. *Id*. at 641.

In connection with this review, the bankruptcy court noted that Lazard had tried to evade the evidentiary standards outlined in section 330 by instead attempting to substitute a "market" theory approach. The court was not persuaded by this approach. *Id*. at 643-44. The bankruptcy court observed that Section 330(a)(3) provided specific criteria for the court to consider in reviewing a fee request, including factors such as the time spent on the services, the rates charged, and whether the services were appropriate to the nature of the issue or task addressed. *Id*. at 644-645. In order to apply these factors, the bankruptcy court stated that courts had adopted what has been identified as the "lodestar analysis." *Id*. at 645. Relying on the Supreme Court's decision in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566 (1986), Judge Morris found that the Supreme Court had found that the typical lodestar analysis implemented most, if not all, of the factors set forth in section 330(a)(3). *In re Northwest Airlines,* 382 B.R. at 645. The loadstar amount, Judge Morris found, reflected the novelty and complexity of the matter, the quality of the representation and the results achieved, and she concluded that enhancements to that lodestar amount were proper only in rare and exceptional cases supported by specific evidence and detailed findings. *Id*. at 645, *citing Blum v. Stenson,* 465 U.S. 886, 898-901 (1984).

In this case, in considering all the evidence presented under Section 330(a)(3), the bankruptcy court rejected Lazard's request for a success or completion fee. The court found it unclear whether she could find, with reasonable certainty, the success being claimed by both Lazard and FTI was solely attributable to either professional. *In re Northwest Airlines,* 382 B.R. at 651. It appeared to the

bankruptcy court that Lazard performed the analysis and tasks appropriate for its engagement as financial advisors to the Committee. The bankruptcy court stated that the fact that the reorganization was successful was precisely the result contemplated by Congress when it enacted chapter 11 of the Bankruptcy Code. Therefore, the bankruptcy court found that Lazard's application for a success or completion fee did not meet the standards outlined under Section 330(a) of the Bankruptcy Code. *Id*.

In denying the Completion Fee Request, the bankruptcy court fully considered Lazard's argument that its Completion Fee Request should be granted because the payment of a completion fee to a financial advisor was the customary practice in large chapter 11 cases. The bankruptcy court reviewed each bankruptcy case and retention application relied on by both Lazard and FTI as support for their respective positions that a market based approach should be applied to the facts herein. The bankruptcy court concluded that the retention agreements in the cases relied upon by both Lazard and FTI were distinguishable from the agreement set forth in the Lazard Retention Application. In the cases relied upon, where a success, transactional or restructuring fee was awarded, the terms specifying when such fees would be awarded were specifically set forth in the respective retention agreements. In the instant case, the bankruptcy court noted that the Lazard Final Retention Order did not reference or incorporate by reference any objective guidelines to determine whether they were entitled to a success or completion fee, much less how much the fee should be. *Id*. at 648. The bankruptcy court found Lazard's market-driven approach unpersuasive absent compliance with the standards set forth in section 330(a). *Id*.

On February 29, 2008, the bankruptcy court entered an Order Denying Allowances of Completion Fee Requests of Lazard Frères & Co., LLC. [P-16; ECF Doc. No. 8105]. Lazard timely filed its Notice of Appeal on March 10, 2008. [P-17; ECF Doc. No. 8123].

## SUMMARY OF ARGUMENT

The bankruptcy court did not abuse its discretion in denying Lazard's request for a success or completion fee of $3,250,000. The bankruptcy court properly determined that the appropriate

standard of review for these additional fees was 11 U.S.C. § 330(a)(3).  Under the standards set forth

in section 330(a)(3), a court considering whether to award fees to a professional retained in the case is

required to consider a number of factors including such factors as the time spent on the services,

whether the services were reasonable and beneficial, the rates charged for the services, and whether

the services were performed within a reasonable amount of time commensurate with the complexity of

the task addressed.  In reaching the determination that these factors under section 330(a)(3) must be

considered, the Bankruptcy Court correctly rejected Lazard's argument that the sole factor to be

considered was "a market" theory –  that is, whether Lazard's fees were consistent with the fees

charged in the marketplace.

The court also correctly held that Lazard did not adduce evidence of "truly exceptional results"

required for lodestar enhancement.  The bankruptcy court's decision was amply supported by the

evidence of record and should be affirmed.

## ARGUMENT

**The Bankruptcy Court Did Not Abuse Its Discretion In Denying Lazard's Request For A Completion Or Success Fee.**

**A.     The bankruptcy court properly reviewed Lazard's fee enhancement request for "reasonableness" under 11 U.S.C. § 330.**

As the bankruptcy court properly concluded, the standard of review to be applied to the

Completion Fee Request was section 330(a)(3) of the Bankruptcy Code.   Lazard does not assert here,

as it did below, that its Completion Fee Request was pre-approved as part of the Final Retention Order

or that its Completion Fee Request should be considered under section 328(a) of the Bankruptcy Code.

*See* Lazard's Brief ("Br.") at 11.   Rather, Lazard instead argues that the court below erred in failing to

rely on Section 330(a)(3)(E) to the exclusion of the other factors set forth in Section 330(a)(3).  *See*

Br. at 12.  This argument fails.

1.    **Section 330(a)(3) is the Proper Standard of Review**

Section 328(a) authorizes a committee to obtain prior court approval of a professional's compensation plan, such as through a contingent fee arrangement. Pre-approval eliminates any uncertainty as to the professional's compensation arising from the bankruptcy court's *post-facto* review under section 330(a)(1). *Daniels v. Barron (In re Barron)*, 325 F.3d 690, 692 -93 (5th Cir. 2003). Section 328(a) permits a bankruptcy court subsequently to award different compensation if "developments, which made the approved plan improvident, had been incapable of anticipation at the time the award was granted . . . ." *Id*. at 693.

The Committee and Lazard could have protected themselves by obtaining prior bankruptcy court approval of Lazard's completion fee under section 328(a). They chose not to do so, however. *Id*. As an initial matter, as Lazard and the Committee concede, the bankruptcy court properly reviewed Lazard's entitlement to fee enhancement under 11 U.S.C. § 330(a)(3).[11] *See In re Northwest Airlines,* 382 B.R. at 644.

2.    **Bankruptcy courts have substantial discretion in awarding fees under 11 U.S.C. § 330(a).**

Section 330(a) grants a bankruptcy court broad discretion to pay committee professionals what the court determines to be a "reasonable" fee for "actual" services that are "necessary." 11 U.S.C. § 330(a). *Cahill*, 428 F.3d at 539; *In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 840 (3rd Cir. 1994). In determining "reasonable" compensation, a bankruptcy court may consider a non-exclusive list of five "relevant factors" pertaining to the "nature, the extent and the value" of the services rendered, "including — (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the

---

[11]Abandoning a position it adopted previously [P-6, ECF Doc. No. 7586], in its appellate brief Lazard concedes that "[t]he Bankruptcy Court concluded, and Lazard does not dispute, that the proper standard for determining the reasonableness of a professional's completion fee, not otherwise approved under section 328 of the Bankruptcy Code, is that provided for in section 330 of the Bankruptcy Code." Br. at 11. *Note omitted.*

services were rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time . . . ; and (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title . . . ." 11 U.S.C. § 330(a)(3). *In re Teraforce Tech. Corp.*, 347 B.R. 838, 846 – 847 (Bankr. N.D. Tex. 2006).

Section 330(a)(2) expressly authorizes bankruptcy courts, in the exercise of their discretion, to "award compensation that is less than the amount requested . . . ." *Cahill*, 428 F.3d at 539. Moreover, section 330(a)(4) prohibits the bankruptcy court from awarding compensation for "unnecessary duplication of services . . . or . . . services that were not . . . reasonably likely to benefit the debtor's estate . . . or . . . necessary to the administration of the estate . . . ." Section 331 authorizes bankruptcy professionals to seek interim compensation on the same basis as under section 330(a). *See Teraforce Tech. Corp.,* 347 B.R. at 846-47.

Bankruptcy courts use the "lodestar" method, which was adopted from non-bankruptcy, fee-shifting cases, to calculate "reasonable" fees under section 330(a). *See Matter of First Colonial Corp. of Am.,* 544 F.2d 1291 (5th Cir.1977), *cert. denied,* 431 U.S. 904 (1977), *citing Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974) (interpreting the Civil Rights Act of 1964, 42 U.S.C. A. 2000e-5(k)). "A court computes the lodestar by multiplying the number of hours [a professional] would reasonably spend for the same type of work by the prevailing hourly rate in the community . . . A court then may adjust the lodestar up or down based on the factors contained in § 330 and its consideration of the twelve factors listed in *Johnson* . . . ."[12] *Cahill*, 428 F.3d at 539-40.

---

[12] *Cahill* summarized the *Johnson* factors in a footnote as "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases . . . ." *Id.*, *citing Johnson,* 488 F.2d at 719. "The lodestar analysis takes into account each of the factors specifically mentioned in § 330(a)(3) plus additional relevant [*Johnson*] factors . . . ." *Commercial*

Over the last fifteen years, the United States Supreme Court, in interpreting various fee-shifting statutes,[13] has limited a Federal court's ability to enhance attorneys' fees beyond the lodestar. The Court has held that the lodestar is *presumed* to be the reasonable fee,[14] and that "[a]n upward adjustment may be justified in the rare case where the applicant offers specific evidence to show that the quality of service rendered was superior to that one should reasonably expect in light of the hourly rates charged and that the success was exceptional . . . ." *Delaware I*, 478 U.S. at 565. Accordingly, enhancements to the "lodestar" amount are proper only in rare and exceptional cases supported by specific evidence and detailed findings. *In re Brous,* 370 B.R. 563, 569 (Bankr. S.D.N.Y. 2007) (*citing Connolly v. Harris Trust Co. Of Cal. (In re MiniScribe),* 309 F.3d 1234, 1243 (10th Cir. 2002)).

The applicant – here Lazard – bears the burden of proving both "the reasonableness and necessity of fees requested in the fee application . . . ." *Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Charles N. Wooten, Ltd. (Matter of Evangeline Ref. Co.),* 890 F.2d 1312, 1326 (5th Cir.1989). "This burden is not to be taken lightly, especially given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors or use by debtor." *In re Pettibone Corp.*, 74 B.R. 293, 299-300 (Bankr. N.D. Ill. 1987). The applicant bears the specific burden "of proving the prevailing 'community rate' . . . ." *In re El Paso Ref., Inc.*, 257 B.R. 809, 833 (Bankr. W.D. Tex. 2000).

---

*Fin. Servs., Inc. v. Houlihan Lokey (In re Commercial Fin. Servs., Inc.)*, 427 F.3d 804, 811 (10th Cir. 2005).

[13] *Farrah v. Hobby*, 113 S.Ct. 566 (1992) (Civil Rights Attorneys Fees Award Act); *City of Burlington v. Dague*, 112 S.Ct. 2638 (1992) (Solid Waste Disposal Act and Clean Water Act); *Blanchard v. Bergeron*, 489 U.S. 87 (1989) (Civil Rights Attorneys Fees Award Act); *Pennsylvania v. Delaware Valley Citizens Council*, 483 U.S. 711 (1987) (*Delaware II*)(Clean Air Act); *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546 (1986) (*Delaware I*) (same); *Blum v. Stenson*, 465 U.S. 886 (1984) (Civil Rights Attorneys Fees Award Act); *Hensley v. Eckerhart*, 461 U.S. 424 (1983) (same).

[14] "[W]hen . . . the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee . . . ." *Blum,* 465 U.S. at 897

3.    **Lazard's Argument that Primacy Be Given to § 330(a)(3)(E) to the Exclusion of all Other Factors Must Be Rejected**

Rather than considering all the nonexclusive factors of section 330(a)(3), Lazard misapplies section 330(a)(3) by giving primacy to subsection (E). By its statutory terms, subsection (E) is only one of a non-exhaustive set of five factors warranting judicial consideration in determining reasonable compensation in a particular case. *In re Commercial Fin. Servs., Inc.*, 427 F.3d at 811-12 (holding that "[b]ased on the statutory language alone, under 11 U.S.C. § 330(a)(3), a bankruptcy court is directed to consider at least five factors, among which four either explicitly or implicitly direct a bankruptcy court to examine the amount of time spent on a project . . . ."). Section 330 prescribes that courts may award only "reasonable compensation" and that courts "*shall consider* the nature, the extent, and the *value* of such services, taking into account *all relevant factors* . . . ." (Emphasis added) 11 U.S.C. § 330(a)(3). Lazard's interpretation would eliminate the bankruptcy court's discretion to determine reasonableness based upon the factors listed in subsection (a)(3), among others. *See Cahill*, 428 F.3d at 539.

The language of section 330 makes it clear that a court is expected to take into account all relevant factors. The word "factors" is in the plural. There is nothing in the statutory language that even suggests that one factor be given primacy to the exclusion of other factors. *See Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004) (interpreting 11 U.S.C. § 330(a) and stating that "[i]t is well established that 'when the statute's language is plain, the sole function of the courts - at least where the disposition required by the text is not absurd - is to enforce it according to its terms. . .'") (internal citations omitted). At most, therefore, market or customary rates charged by similarly situated professionals is only one of several factors that a court considers in reviewing a request for fees under section 330(a)(3). Had Congress intended to restrict the bankruptcy court's analysis of comparability to one factor it could have done so. But clearly, it did not. *Cf. Miller Buckfire & Co., LLC v. Citation Corp. ( In re Citation Corp.)*, 493 F.3d 1313, 1320 (11th Cir. Ala. 2007) ("Four of the five required statutory factors [of 11 U.S.C. § 330(a)(3)] either explicitly or implicitly direct a bankruptcy court to examine the amount of time spent on either the

17

project as a whole or to examine the time spent on individual units of the professional's work.");  *In re Collida*, 270 B.R. 209, 214 (Bankr. S.D. Tex. 2001) (finding that the court must consider all the factors set forth in section 330).

Having acknowledged the applicability of section 330 to the determination of the reasonableness of its Completion Fee Request, Lazard may not now selectively apply only one factor under section 330 in an effort to achieve the same result as if its entire request for compensation (including the Completion Fee) were pre-approved under section 328.  By urging the Court to award it the same compensation that has been awarded to financial advisors in other comparable bankruptcy cases, Lazard ignores the circumstances under which it was retained.  At the time of its retention, with the exception of two cases (out of eight bankruptcy cases) – those being the *Delta Airlines*[15] and *Calpine*[16] bankruptcy cases – the compensation of the financial advisors that Lazard currently relies upon to justify its Completion Fee had already been determined.  *See* [P-19; ECF Doc. No. 8154].  Accordingly, Lazard was in a position to roughly calculate what success or completion fee it would likely seek and shelter it from challenge other than on an "improvident" basis pursuant to section 328.  Alternatively, Lazard could have sought to guarantee a completion fee under section 328, without fixing the amount of the Completion Fee.[17]

However, as Lazard conceded at the hearing, the Committee had made it clear that it was not prepared to retain Lazard on any basis that guaranteed a completion fee to Lazard. [P-10, (Kurtz) 28:9-20; ECF Doc. No. 7857].  Therefore, as the bankruptcy court stated, Lazard, a sophisticated party who touted its experience in other chapter 11 actions, knew or should have known when it bargained as part of its

---

[15] On September 14, 2005, Delta Airlines filed a chapter 11 case in the United States Bankruptcy Court for the Southern District of New York under the case number 05-17923.

[16]  On December 20, 2005, Calpine Corporation filed a chapter 11 case in the United States Bankruptcy Court for the Southern District of New York under the case number 05-60200.

[17] While it is not clear whether Lazard's Completion Fee could have properly availed itself of the pre-approved standard under section 328 if Lazard's Retention Application did not specify the amount of the Completion Fee or some basis for determining the amount of such Completion Fee, in the current case Lazard knowingly did not provide for a Completion Fee under section 328.

retention for the right to make a request for a success or completion fee, that the "right to deny" a request is the companion to the "right to make" the same request. *In re Northwest Airlines,* 382 B.R. at 652.

Lazard's admitted goal, to achieve the same result whether a financial advisor's compensation is pre-approved under section 328 or entirely subject to section 330,[18] opens the door to circumstances that run counter to the intended purpose of ensuring the reasonableness of compensation authorized pursuant to section 330. Lazard's application of the market-driven approach invites potential abuses that would remain resistant to Court oversight. As applied in the instant case, a market-driven approach that almost exclusively focuses on fees earned in other allegedly comparable cases, decouples the professional's responsibility from the very case for which the professional has been retained. Under Lazard's approach, the very same arguments for a completion fee could, and presumably would, be advanced even if the results in a particular case were unexpectedly unsuccessful, and the bankruptcy court would be powerless to exercise its discretion to ensure the reasonableness of the compensation awarded to financial advisors.

As the bankruptcy court explicitly found, in every case cited by Lazard to support its request for its Completion Fee, the financial advisor or investment banker had managed to include specific terms establishing an entitlement to a completion fee in their respective retention orders. *Id. at 646-51.*[19]

---

[18] *See* Br. at 18 ("the market for such [completion] fees is the same regardless of whether they are pre-approved under section 328 or subject to a reasonableness review under section 330.")

[19] Judge Morris analyzed each case and each retention application advanced by FTI and Lazard in support of their market-driven approach to justifying their requests for a success or completion fee, and Judge Morris distinguished each retention application for the respective financial advisors from the retention applications for FTI and Lazard in the instant case. In *In re Mirant Corp.*354 B.R. 113 (Bankr. N.D. Tex. 2006) and *In re NorthWestern Corp.* 344 B.R. 40 (D. Del. 2006) Judge Morris noted that all of the financial advisors in those cases had been retained pursuant to section 328 with the terms of their monthly compensation as well as the terms of their "success fees" or "restructuring fee" fully disclosed in their respective retention applications. Similarly, the retention applications for each financial advisor referred to by either FTI or Lazard as professionals retained pursuant to section 328 in *In re Adept Bus. Solutions, Inc.* No. 02-11289 (Bankr. S.D.N.Y,), *In re Delta Airlines,* No. 05-17923 (Bankr. S.D.N.Y.), *In re UAL Corp.* No. 01-48191 (Bankr. N.D. Ill.), as well as the instant case (*In re Northwest Airlines Corp.*), all contained full disclosures of the terms under which the financial advisor was entitled to a success, completion, transaction, or restructuring fee and the manner in which the fee would be calculated. The only exception was the financial advisor in *Howard & Zukin Capital v. High River Ltd. P'ship,* 369 B.R. 111 (S.D.N.Y. 2007), wherein, although the entitlement to the transaction fee was guaranteed, the

In contrast, as even Lazard conceded at the hearing before the bankruptcy court, [P-10, (Kurtz) 58: 23-25 and 59: 1-3; ECF Doc. No. 7857], the Retention Application specifically contemplated the possibility that Lazard might not be entitled to any completion fee at all. Yet, Lazard continues to ignore the fact that its request can be denied and has proceeded solely as if the only question is whether the fees it is seeking are comparable to the fees customarily charged by financial advisors in other cases. Clearly, Section 330(a)(3) contemplates that all factors will be considered by the court, not just one. *Cf. In reWilliams*, 384 B.R. 191, 194-95 (Bankr. N.D. Ohio, 2007) (in a review of fees under 330(a)(4)(B) which incorporates section 330, court noted that by statute it must consider the factors under 330(a)(3) and listed those factors); *Harris v. Dublin (In re U-Can Rent, Inc.)*, 262 B.R. 147, 151 (Bankr. M.D. Ga. 2001) ("Section 330(a)(3) lists five nonexclusive factors the court must consider in determining the amount of compensation that may be awarded to a trustee.")

### 4. The Bankruptcy Court Properly Distinguished Lazard's Reliance upon *Howard* in Support of Lazard's Request for a Completion Fee.

The bankruptcy court properly concluded that Lazard's reliance upon *Howard, see Howard,* 369 B.R. at 114-15 (citing to *In re Ames Dept. Stores, Inc.*, 76 F.3.d 66, 71 (2d Cir. 1996)), was misplaced as the facts in *Howard* were distinguishable from those of the instant case. In *Howard,* the Bankruptcy Court awarded a financial advisor approximately $4 million in fees related to financial restructuring services rendered to XO Communications ("XO"). The financial advisor appealed claiming that the bankruptcy court's calculation of its fees based solely on secured debt was an error. Unlike in the instant case, in *Howard*, the financial advisor's retention order, referencing the terms of an engagement letter, provided from the very beginning of the case that there would be a transaction fee awarded to the financial advisor if a plan of reorganization was confirmed.

Specifically, the day after filing its Chapter 11 petition, XO filed a proposed plan of reorganization that addressed two different outcomes. Under Plan A, which involved the influx of

---

calculation of the amount of the transaction fee was deferred until later in the case and governed by section 330 (rather than section 328).

new capital from certain investors, the retention order (which incorporated the terms of a modified engagement letter entered into between XO and the financial advisor) provided that the financial advisor would receive a transaction fee of $20 million.  Under Plan B, which involved the implementation of a stand-alone restructuring without raising any additional capital, the retention order provided that the reasonableness of the transaction fee for the financial advisor would be considered at a subsequent hearing.  *Howard*, 369 B.R. at 113.  Therefore, as the bankruptcy court herein correctly found, *see In re Northwest Airlines,* 382 B.R. at 648, in *Howard*, unlike this case, the retention order clearly contemplated that there would be a transaction fee awarded to the financial advisor.  The only issue would be the amount of the fee if Plan B was confirmed.

Moreover, while it is true that in *Howard* the Court found that both the parties and the Court agreed that the Second Circuit had established a "market-driven" approach to fees awarded to professionals, *Howard*, 369 B.R. at 114-15, the Court also made it clear that market factors were only one of the factors to be considered by a court reviewing a request for fees.  Not only did the Court set forth all the factors to be considered when reviewing a request for fees under Section 330(a)(3), see *Howard*, 369 B.R. at 115, n.3, but it specifically rejected the financial advisor's argument that the Bankruptcy Court erred by (i) looking at the unsuccessful outcome of the restructuring, taking creditor recoveries into account, and by (ii) considering whether the services were reasonable and beneficial when rendered.  *Id*. at 119-20.  The Court specifically found that the Bankruptcy Court had not abused its discretion when considering all this information – all factors to be considered under Section 330(a)(3).  *Id*. at 120.

While Lazard would no doubt admit that the market-driven approach in *Ames*, as applied to attorneys billing by the hour, is not inconsistent with the lodestar approach, Lazard rejects the lodestar approach for those financial advisors who do not typically bill on an hourly basis.  As noted above, that conclusion is inconsistent with the Tenth and Eleventh Circuits that hold that where the

compensation of financial advisors is reviewable under section 330 (as opposed to section 328), the lodestar or adjusted lodestar approach is applicable.  *See Miller Buckfire & Co., LLC v. Citation Corp.*, 493 F.3d 1313, 1318 (11th Cir. 2007);  *Houlihan Lokey Howard & Zukin Cap. v. Unsecured Liquidating Trust*, 427 F.3d 804, 811 (10th Cir. 2005).  In the Second Circuit, *Howard* is not inconsistent with the adjusted lodestar approach, which considers various fee rates, the comparison of compensation of comparable professionals, and the results obtained in determining reasonableness under section 330.

Lazard ignores the most obvious and perhaps the most significant difference between its compensation arrangement and those it cites in *Howard* and other supposedly comparable bankruptcy cases.  In each example cited by Lazard, the financial advisor's entitlement to a completion fee was essentially "guaranteed" (*i.e.,* where the terms of the professional's entitlement to the fee were fully disclosed, and where, with the exception of the *Howard* case, the basis for calculating the fee was also fully disclosed at the time of retention).  In the instant case, however, where Lazard's entitlement to a completion fee was not guaranteed at the time of Lazard's retention by the Committee.  *See In re Northwest Airlines,* 382 B.R. at 646-51.  The lack of a guaranteed completion fee would seem to mandate the application of the lodestar or adjusted lodestar approach.  In the instant case, just as in *Howard*, where the examples of cases displaying the compensation arrangements of various financial advisors are determined to be not relevant to the case at hand, the bankruptcy court may properly ignore such examples. *See Howard*, 369 B.R. at 117 ("Without evidence that the cited restructuring cases possess these similarities to the instant case, the Bankruptcy Court was well within its discretion in declining to rely on them . . . .").

5.    **Lazard failed to adduce evidence of "truly exceptional results," meriting an upward adjustment of the lodestar.**

Here, after considering all the evidence presented, the bankruptcy court, having previously concluded that Lazard's failure to provide terms for the determination of the Completion Fee mandated the application of the lodestar (or adjusted lodestar) approach, correctly denied the request for a success or completion fee under Section 330.  *In re Northwest Airlines,* 382 B.R. 643-45.  This decision was amply supported by the evidence of record.

Beginning with the presumption that the lodestar constitutes reasonable compensation, the fee applicant bears the burden of proving that an upward adjustment is necessary in a particular case. *See Blum,* 465 U.S. at 697-98.  To be entitled to an upward adjustment from the lodestar, the fee applicant is required to provide specific evidence of superior service and exceptional success.  *See Delaware I*, 478 U.S. at 565; *Blum,* 465 U.S. 899; *Brous*, 370 B.R. at 569.

Lazard's market-driven approach to its Completion Fee Request makes no attempt to prove either superior service or exceptional success.  Lazard's reliance upon the compensation earned by other financial advisors in what it regarded as comparable cases to justify its Completion Fee Request does not take into consideration the existence of superior service or exceptional success.  In fact, even if the instant case were acknowledged to be an abject failure by all parties, Lazard's application of its market-driven approach would justify a Completion Fee Request.

There was nothing superior about the services Lazard rendered.  In particular, as the bankruptcy court found, Lazard performed the type of analysis and tasks appropriate for an engagement of the kind for which it was retained.  *See In re Northwest Airlines,* 382 B.R. at 651.  In fact, even Lazard conceded at the hearing that it had not performed any extraordinary services for the estate.   [P-10, (Kurtz) at 58: 23-25 and 59: 1-3; ECF Doc. No. 7857].   While a plan of reorganization was confirmed in this case, as the bankruptcy court appropriately observed, a successful reorganization

23

of the Debtors was precisely the result contemplated by Congress when it enacted chapter 11 of the Bankruptcy Code, and this fact would not justify an award of a success or completion fee.   Moreover, the bankruptcy court's observation, regarding the apprehension that it felt if it were to award large bonuses or completion fees to multiple professionals claiming responsibility for the same successes, was justified.   Indeed, as stated above, care must be taken by the court before awarding any fees to professionals, "given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors or use by debtor." *In re Pettibone Corp.*, 74 B.R. 293, 299 - 300 (Bankr. N.D. Ill. 1987).

The bankruptcy court's caution is amply supported by *In re Molten Metal Technology, Inc.*, 345 B.R. 26 (Bankr. D.Mass. 2006).  In *Molten Metal,* the bankruptcy court acknowledged that the fee applicant performed at a high level of skill.   The bankruptcy court also acknowledged the exceptional results achieved in the cases, which began as an administratively insolvent case with a $20 million deficit, but ultimately resulted in a 5% distribution to unsecured creditors.   Nevertheless, the bankruptcy court did not find the "rare and limited circumstances in which an upward adjustment is warranted" where the responsibility for the exceptional outcome was attributable to "the team and not just one player." *Molten Metal*, 345 B.R. at 29.   In the instant case where no exceptional results have been alleged, and where Lazard cannot claim to be solely responsible for the "success" of the case, no fee enhancement is appropriate.

In sum, Lazard's interpretation and application of the market-driven approach to financial advisors' compensation is inconsistent with the statutory language and intent of the applicable statutes and, therefore, should not be adopted.   Accepting Lazard's approach would mean that a financial advisor may seek to be retained by proposing a monthly compensation arrangement as the sole source of its compensation even while possessing all of the information necessary to calculate the completion fee it intends to seek at some point later in the case.   There would appear to be nothing to stop such a

financial advisor from requesting a completion fee only after the firm has successfully insinuated itself into the case, making it uneconomic for it to be replaced.  If Lazard's approach is adopted, a financial advisor will suffer no detriment by hiding the amount of its intended completion fee because the same analysis on which the fee request will be based later in the case is the same analysis that would have been employed if the firm had proposed its completion at the time of its retention.  Such a lack of transparency cannot be conducive to the efficient administration of a bankruptcy case and may quite likely result in a greater cost to the creditors of the estate.  Accordingly, the Court should reject a market based approach as the sole factor in considering a request for fees by a professional in a bankruptcy proceeding.

## CONCLUSION

Based on the foregoing, the United States Trustee respectfully requests that the Court affirm the Bankruptcy Court's Decision and grant such other and further relief as may be just and proper.

Dated: New York, NY
July 16, 2008

Respectfully submitted,

DIANA G. ADAMS
UNITED STATES TRUSTEE

By:    /s/ Brian S. Masumoto
Brian S. Masumoto
Trial Attorney

Linda A. Riffkin
Assistant United States Trustee
Office of the United States Trustee
33 Whitehall Street, 21st Floor
New York, NY 10004
(212) 510-0500

**STATUTORY ADDENDUM**

**11 U.S.C. § 328(a).  Limitation on Compensation of Professional Persons**

(a) The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 0r 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis.  Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

### 11 U.S.C. § 330(a). Compensation of officers

 (a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103--

    (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

    (B) reimbursement for actual, necessary expenses.

  (2) The court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.

  (3) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including--

    (A) the time spent on such services;

    (B) the rates charged for such services;

    (C)  whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

    (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

    (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

  (4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for--

      (I) unnecessary duplication of services; or

      (ii) services that were not--

         (I) reasonably likely to benefit the debtor's estate; or
         (II) necessary to the administration of the case.

    (B) In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the

2

interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

(5) The court shall reduce the amount of compensation awarded under this section by the amount of any interim compensation awarded under section 331, and, if the amount of such interim compensation exceeds the amount of compensation awarded under this section, may order the return of the excess to the estate.

(6) Any compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application.

**11 U.S.C. § 503. Allowance of administrative expenses**

(a) An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause.

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including--

* * *

       (2) compensation and reimbursement awarded under section 330(a) of this title;

**11 U.S.C. § 507(a). Priorities**

(a) The following expenses and claims have priority in the following order:

(1) First, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.

### 1102. Creditors' and equity security holders' committees

(a)(1) Except as provided in paragraph (3), as soon as practicable after the order for relief under chapter 11 of this title, the United States trustee shall appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors or of equity security holders as the United States trustee deems appropriate.

## Section 1103. Powers and duties of committees

(a) At a scheduled meeting of a committee appointed under section 1102 of this title, at which a majority of the members of such committee are present, and with the court's approval, such committee may select and authorize the employment by such committee of one or more attorneys, accountants, or other agents, to represent or perform services for such committee.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------  x
In re                                                         :  Chapter 11
                                                              :
NORTHWEST AIRLINES CORPORATION,                               :  Case No. 05-17930 (ALG)
et al.,                                                       :
                                                              :  (Jointly Administered)
                                        Debtors.              :
------------------------------------------------------------  x
LAZARD FRÈRES & CO., LLC                                      :
                                                              :  District Court
                                        Appellant,            :
                                                              :  Case No. 08-CV-03456 (NRB)
v.                                                            :
                                                              :
DIANA G. ADAMS, UNITED STATES                                 :
TRUSTEE;                                                      :
CARVAL INVESTORS, LLC; AND                                    :
ASSOCIATION OF FLIGHT ATTENDANTS –                            :
CWA, AFL-CIO,                                                 :
                                                              :
                                        Appellees.            :
------------------------------------------------------------  x
OFFICIAL COMMITTEE OF UNSECURED                               :
CREDITORS OF NORTHWEST AIRLINES                               :  District Court
CORPORATION                                                   :
                                                              :  Case No. 08-CV-03500 (NRB)
                                        Appellant,            :
                                                              :
v.                                                            :
                                                              :
DIANA G. ADAMS, UNITED STATES                                 :
TRUSTEE;                                                      :
CARVAL INVESTORS, LLC; AND                                    :
ASSOCIATION OF FLIGHT ATTENDANTS –                            :
CWA, AFL-CIO,                                                 :
                                                              :
                                        Appellees.            x
------------------------------------------------------------
```

## AFFIRMATION OF SERVICE

I, Brian S. Masumoto, declare under penalty of perjury that:

1.      I am a trial attorney with the Office of the United States Trustee for Region 2.

      2.      On July 16, 2008, I caused true and correct copies of the Brief of Appellee

United States Trustee in the above-entitled bankruptcy appeal to be served by Federal Express

upon each of the parties to the appeal listed below.

Dated:  New York, NY
          July 16, 2008

 

                                    /s/  Brian S. Masumoto
                                    Brian S. Masumoto (BM-8116)
                                    Trial Attorney

| | |
|---|---|
| Honorable Naomi Reice Buchwald<br>Daniel Patrick Moynihan<br>United States Courthouse<br>500 Pearl Street<br>Room 2270<br>New York, New York 10007 | Philip G. Barber<br>Alan W. Kornberg<br>PAUL, WEISS, RIFKIND, WHARTON &<br>GARRISON LLP<br>1285 Avenue of the Americas<br>New York, New York  10019-6064 |
| Scott L. Hazan<br>John A. Bougiamas<br>OTTERBOURG, STEINDLER, HOUSTON<br>& ROSEN, P.C.<br>230 Park Avenue<br>New York, New York 10169 | Sean C. Southard<br>KLESTADT & WINTERS, LLP<br>292 Madison Avenue, 17th Floor<br>New York, New York 10017 |
| Robert S. Clayman<br>GUERRIERI, EDMOND, CLAYMAN &<br>BARTOS, P.C.<br>1625 Massachusetts Ave., N.W., Suite 700<br>Washington, D.C. 20036-2243 | |