UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------- x
In re                                                   :   Chapter 11
                                                        :
                                                        :   Case No. 05-17930 (ALG)
NORTHWEST AIRLINES CORPORATION,                         :
et al.,                                                 :   (Jointly Administered)
                                                        :
                                                        :
                              Debtors.                  :
------------------------------------------------------- x
LAZARD FRÈRES & CO., LLC,                               :
                                                        :
                                                        :   District Court
                              Appellant,                :
                                                        :   Case No. 08-CV-03456 (NRB)
v.                                                      :
                                                        :
                                                        :
DIANA G. ADAMS, United States Trustee;                  :
CARVAL INVESTORS, LLC; and                              :
ASSOCIATION OF FLIGHT ATTENDANTS –                      :
CWA, AFL-CIO,                                           :
                                                        :
                              Appellees.                :
------------------------------------------------------- x
OFFICIAL COMMITTEE OF UNSECURED                         :
CREDITORS OF NORTHWEST AIRLINES                         :
CORPORATION,                                            :
                                                        :   District Court
                              Appellant,                :
                                                        :   Case No. 08-CV-03500 (NRB)
v.                                                      :
                                                        :
DIANA G. ADAMS, United States Trustee;                  :
CARVAL INVESTORS, LLC; and                              :
ASSOCIATION OF FLIGHT ATTENDANTS –                      :
CWA, AFL-CIO,                                           :
                                                        :
                              Appellees.                :
                                                        x
-----------------------------------------------------
```

**JOINT REPLY BRIEF IN FURTHER SUPPORT OF APPEALS FROM
DECISION OF THE BANKRUPTCY COURT DENYING
<u>COMPLETION FEE PORTION OF FINAL FEE APPLICATION</u>**

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Alan W. Kornberg *(akornberg@paulweiss.com)*
Philip G. Barber *(pbarber@paulweiss.com)*
1285 Avenue of the Americas
New York, New York  10019-6064
Telephone: (212) 373-3000
Telecopier: (212) 757-3990

*Attorneys for Appellant Lazard Frères & Co., LLC,
Financial Advisor to the Official Committee of
Unsecured Creditors*

OTTERBOURG, STEINDLER, HOUSTON &
ROSEN, P.C.
Scott L. Hazan (*shazan@oshr.com*)
John Bougiamas (*jbougiamas@oshr.com*)
230 Park Avenue
New York, New York 10169
Telephone: (212) 661-9100
Telecopier: (212) 682-6104

*Attorneys for Appellant Official Committee of
Unsecured Creditors*

Appellants Lazard Frères & Co., LLC ("Lazard"), financial advisor to the Official Committee of Unsecured Creditors of Northwest Airlines Corp. (the "Committee") and the Committee submit this Joint Reply Brief (the "Reply Brief") in Further Support of Appeals from Decision of the Bankruptcy Court (the "Bankruptcy Court Decision") Denying Completion Fee Portion of Fee Application entered by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on February 29, 2008 and in response to (a) the Joint Brief in Opposition to Appeals from Decision of the Bankruptcy Court Denying Additional Compensation filed by Appellees CarVal Investors, LLC ("CarVal") and the Association of Flight Attendants-CWA, AFL-CIO ("AFA") (the "CarVal/AFA Brief") and (b) the Brief of Appellee United States Trustee (the "UST Brief") (CarVal, AFA and the US Trustee, collectively, "Appellees").

**SUMMARY OF ARGUMENT**

As set forth in Appellants' opening brief (the "Opening Brief"), the Bankruptcy Court failed to correctly apply section 330 of the Bankruptcy Code to the completion fee component of Lazard's fee request. Not only did the Bankruptcy Court incorrectly reject the market-driven approach of section 330 which the District Court has expressly endorsed, but it also failed to consider other relevant factors enumerated in section 330, and instead focused on other matters that are irrelevant under the circumstances.[1] Appellees' arguments to the contrary are without merit.

---

[1] The CarVal/AFA Appellees argue that the Bankruptcy Court Decision deserves "great deference" because "the presiding bankruptcy court [which] is 'intimately familiar with the nuances of the case, is in a far better position to make [such] decision than is an appellate court, which must work from a cold record.'" (CarVal/AFA Br. at 2.) However, as noted in the Opening Brief, Judge Gropper, who presided over the *Northwest* chapter 11 cases, recused himself from this dispute due to a conflict in a related matter. As a result, the court below was no more familiar with these matters than this Court.

*First*, Appellees mischaracterize Lazard's argument. Lazard has never asserted that the market-driven approach of section 330 should be applied to the exclusion of all else. To the contrary, as the Opening Brief makes clear, the market-driven factor is *"**important**,"* but should be applied along with other relevant factors, such as the benefit conferred upon the debtors' estates and the level of skill and expertise possessed by the professional. *Second*, Appellees fail to proffer a single rational basis for distinguishing the *Howard* case. This is significant because the Bankruptcy Court's misreading of that case formed the basis for its rejection of the market-driven approach. *Third*, Appellees' criticisms of the methodology underlying Lazard's benchmarking analysis does not undermine the validity of the comparables provided by Lazard. No two bankruptcy cases are identical. The evidence presented by Lazard amply demonstrated what financial advisors of Lazard's caliber are being paid in mega-cases such as the *Northwest Airlines* chapter 11 case. *Fourth*, Appellees rely heavily on the lodestar method for determining the reasonableness of Lazard's fees even though such an approach is not relevant to fee arrangements that are not based on an hourly rate structure such as those of financial advisors. *Fifth*, Appellees mischaracterize Lazard's request as a "fee enhancement" even though Lazard does not seek an upward adjustment of its lodestar fee, but recovery of a separate component of its court-approved compensation arrangement. *Finally*, Appellees' policy arguments for denying Lazard's completion fee are contrary to the well-established principle that bankruptcy professionals should be compensated reasonably and at market rates.

Accordingly, because the Bankruptcy Court clearly erred in its application of the law, and because Lazard's request for a completion fee meets the requirements of

2

section 330 of the Bankruptcy Code, Lazard and the Committee respectfully request that this Court reverse the Bankruptcy Court Decision and approve Lazard's application for a completion fee.

**ARGUMENT**

**THE BANKRUPTCY COURT CLEARLY ERRED IN DENYING LAZARD'S COMPLETION FEE**

A.   The Market-Driven Approach Is An Important Factor
     <u>Under Section 330 That The Bankruptcy Court Failed To Apply</u>

Although section 330 of the Bankruptcy Code specifically instructs courts to consider "the customary compensation charged by comparably skilled practitioners in cases other than cases under this title," the Bankruptcy Court utterly rejected this market-driven approach along with the evidence Lazard presented in support thereof. *See* 11 U.S.C. § 330(a)(3)(F). In so doing, the Bankruptcy Court clearly erred.

Appellees concede that the market-driven approach is one of several factors to consider under section 330. (UST Br. at 17; CarVal/AFA Br. at 11-12.) Yet, Appellees attach no significance to the Bankruptcy Court's outright rejection of this statutory factor.[2] (*See* Bankruptcy Court Decision at 643-44.) Rather, to mask this clear error, they mischaracterize Appellants' Opening Brief and argue that the market-driven factor cannot be applied to the exclusion of all else. (UST Br. at 17-20; CarVal/AFA Br. at 11-12.) To the contrary, Appellants twice stated that the market-driven factor is an "***important***" one, especially with respect to completion fees, and the Bankruptcy Court

---

[2]   Although the US Trustee agrees with Appellants' interpretation of the Bankruptcy Court Decision, (UST Br. at 11), CarVal/AFA argue that Appellants misquoted the Bankruptcy Court when they stated that the Court was "not persuaded by this theory" in reference to the market-driven approach, and clarify that the Court stated it was not persuaded by the market theory "*absent compliance with the standards outlined in Bankruptcy Code Section 330(a).*" (CarVal/AFA Br. at 8, fn. 4.) (Emphasis added.) However, CarVal/AFA's clarification merely reinforces Appellants' point that the Bankruptcy Court failed to recognize the significance of the market-driven factor as a separate component of the section 330 analysis.

should have applied it, along with the other relevant factors of section 330 such as the benefit conferred upon the debtors' estates and the skill and expertise possessed by the professional. (Opening Br. at 12, 13, 18, 20.) Appellants have not only demonstrated that Lazard's completion fee is in line with the market, but they have also established that Lazard conferred significant benefits upon the estates (Opening Br. at 18-20) and possessed the highest levels of skill and expertise (Opening Br. at 20-21).[3] Notably, Appellees have never challenged Lazard's level of expertise or the quality of or benefit derived from its work, nor do they dispute that the Bankruptcy Court ignored these important factors in denying Lazard's completion fee request.

**B.     Appellees Fail To Reconcile the Bankruptcy Court's Misreading of the *Howard* Case**

As discussed in Appellants' Opening Brief, the Bankruptcy Court misread *Howard* v. *High River Ltd. P'Ship*, 369 B.R. 111 (S.D.N.Y. 2007)—a case in this District which concerns the application of section 330 to the award of a completion fee—and consequently, improperly distinguished it. (Opening Br. at 15-16.) While CarVal/AFA merely repeat the Bankruptcy Court's misconstruction, the US Trustee attempts to distinguish *Howard* on the basis that although no completion fee formula was agreed to upon retention, in *Howard*, unlike here, the "retention order clearly contemplated that there would be a transaction fee awarded to the financial advisor" and "the only issue would be the amount of the fee." (UST Br. at 21.) The facts of *Howard* do not support this reading. There was absolutely no indication that the completion fee was ***guaranteed***.

---

[3]   The US Trustee argues that, according to *Howard*, in addition to the factors enumerated in section 330 of the Bankruptcy Code, the Bankruptcy Court must consider the outcome of the chapter 11 cases in determining the propriety of a financial advisor's completion fee in a chapter 11 case. (UST Br. at 21.) Here, such a consideration only strengthens Appellants' argument that Lazard deserves its completion fee. As Judge Gropper noted, the Northwest Airlines reorganization was an "exceptional success." (Sept. 11, 2007 Hearing Tr. (Gropper, J.) 83:24-25.)

4

Rather, "[t]he Bankruptcy Court never confirmed a specific fee [or formula to calculate such fee] for Plan B-instead, *the reasonableness of a fee for Plan B* was to be determined at a subsequent hearing." *Howard*, 369 B.R. at 113 (emphasis added). Even assuming, *arguendo*, that the fee in *Howard* was guaranteed, it is a distinction without a difference. The court proceeded to apply section 330 to determine the reasonableness of the requested completion fee.

**C.     Appellees Have Failed To Rebut
        Lazard's Benchmarking Analysis**

CarVal/AFA attempts to undermine the validity of Lazard's benchmarking analysis[4] by identifying differences between the *Northwest* chapter 11 cases and the other cases cited by Lazard. (CarVal/AFA Br. at 14-19.) Appellants, however, have never argued that the *Northwest* chapter 11 cases are *identical* to the cases in Lazard's benchmarking analysis. Of course there are differences among cases of such magnitude; no two corporate reorganizations are the same. Rather, the examples cited by Lazard are *comparable* and CarVal/AFA do not prove otherwise.

**D.     Appellees Mistakenly Rely On The Lodestar
        Method For Determining Reasonableness**

The lodestar method for determining reasonableness—which multiplies hourly billing rates by hours expended—is not useful for determining a financial advisor's fees when the uncontroverted evidence is that such advisor has no hourly rates and does not charge its clients on such a basis. As has been explained,

---

[4]   CarVal/AFA assert that Lazard's benchmarking analysis (Docket No. 8154) was not offered or accepted into evidence by the Bankruptcy Court. (CarVal/AFA Br. 4, fn. 1.) However, Lazard's benchmarking analysis was accepted into evidence by the Bankruptcy Court at the November 19, 2007 evidentiary hearing, marked as Lazard 1 for identification. (Hearing Tr. 32:14-16.)

5

> [t]he lodestar approach is perfectly consistent with the usual and customary practices of the *legal* professional. It is not necessarily consistent with the practices of other professions [like financial advisors] . . . . Furthermore, the use of hourly rates and billings on the basis of time expended, in this context, does not necessarily demonstrate much about the value of an advisor's contribution to the reorganization process.

James W. Giddens, *Compensation of Investment Bankers in Bankruptcy Proceedings: Just or Unjust Enrichment?,* 23 Ann. Rev. Banking & Fin. L. 485, 507, 526 (2004) (emphasis added) (hereinafter, "Giddens Article"). Nonetheless, Appellees insist upon a lodestar approach to Lazard's completion fee, thereby creating an hourly rate which they argue is excessive. (UST Br. at 23-24; CarVal/AFA at 19-20.)

The US Trustee asserts that the Tenth and Eleventh Circuits apply a lodestar analysis to financial advisory fees and that *Howard* is not inconsistent with such approach. (UST Br. at 22.) Yet the *Howard* court, which considered the reasonableness of a financial advisor's completion fee under section 330—***the very issue we are presented with here***—did not apply lodestar. Rather, the District Court in *Howard* stated quite clearly that "***the Second Circuit has established a "market-driven" approach*** to fees awarded to professionals under the controlling statute at issue here, section 330 of the Bankruptcy Code." *Id.* at 114 (emphasis added).

In addition, CarVal/AFA attempt to make Lazard's compensation appear inflated by creating an artificial hourly rate and comparing it to the hourly rates of attorneys who worked on the *Northwest* cases. (CarVal/AFA Br. at 20.) The fallacy of this argument is obvious:

> If five members of a firm worked a total of 100 hours during a month and were paid $250,000, a court may be "shocked" that the firm was being paid $2,500 an hour,

6

> rates drastically greater than the highest fees for partners in major law firms. Equally, a court or U.S. trustee or fee auditor, with no real experience or understanding of the value of services, might conclude that their advice and studies produced little benefit or duplicated services that could be performed by a debtor's management, accountants or bankruptcy lawyers. . . . Nevertheless, the parties in interest have persisted in their desire to have financial advisors participate.

Giddens Article at 526-27. Indeed, here, the Committee supports (and the Debtors do not object to) payment of the $3,250,000 completion fee requested by Lazard (Opening Br. at 8-9) and each of these constituencies are duty bound to maximize estate value and preserve assets.

### E. The Completion Fee Request Is Not A "Fee Enhancement"

Appellees continue to mischaracterize the completion fee as an upward adjustment to lodestar, or a fee enhancement. (UST Br. at 23-24; CarVal/AFA Br. at 8-11.) A fee enhancement is prohibited under section 328(a) absent a finding that the payment terms were "improvident in light of developments not capable of being anticipated." However, Lazard's request for a completion fee is not a request for an enhancement of its monthly fees that were pre-approved under section 328. Rather, the completion fee is a separate component of Lazard's compensation that is fully consistent with the fee structure in the marketplace for its services. As has been noted,

> [i]n a request for section 330 compensation, the rate charged by the professional is set by the marketplace, which incorporates the professional's high level of skill and expertise into the rate.[5] When such a professional seeks a fee enhancement, premium or bonus, it is necessary to determine whether the professional exceeded the high level

---

[5] This statement applies equally to a request for section 328 compensation, the difference being that compensation awarded pursuant to section 328 is pre-approved, which obviates the need for the court to perform a section 330 reasonableness analysis at the conclusion of the case.

7

> of skill and expertise built into the market price, and whether any extraordinary success was achieved that was unanticipated.

*In re Enron Corp.*, 2006 WL 1030421, *6 (Bankr. S.D.N.Y. 2006).  As demonstrated by Lazard's benchmarking analysis, Lazard's monthly fees by themselves would not be market compensation; rather, they are just one component of total compensation.  Moreover,

> [a] success fee . . . is not a "bonus," "premium" or "fee enhancement" as such terms are often used to describe a request by a section 330 professional based upon extraordinary results, inter alia, not otherwise compensated for in the hourly rates, etc. of the professional.

*Id.*  Accordingly, Lazard's completion fee is not a "fee enhancement" above and beyond its monthly rate, but a second, integral part of its market-driven compensation.  Therefore, *In re Molten Metal Technology, Inc.*, 345 B.R. 26 (Bankr. D.Mass. 2006), which denied an attorney's request for an upward adjustment of its lodestar, and similar authorities simply are not relevant here.

**F.     Appellees' Policy Argument Is Contrary To Fundamental Bankruptcy Principles**

The take-away from the Appellees' arguments is that Lazard should be penalized for failing to protect itself by obtaining pre-approval of its completion fee under section 328(a) and for failing to define the parameters of any subsequent request for such fee.  (UST Br. at 14, 22; CarVal/AFA Br. at 21.)  Such a draconian approach is not mandated by the Bankruptcy Code and finds no support in case law.  Rather, as discussed in the Opening Brief at page 22, the Bankruptcy Code provides that professionals should be compensated reasonably and consistently with the market.  The

8

Bankruptcy Court Decision, which denies Lazard compensation at a market rate, is at odds with such policy, pure and simple.

CarVal/AFA also suggest that defining the parameters of a completion fee upon retention will further the Bankruptcy Code's goal of full and complete disclosure. (CarVal/AFA Br. at 21.)  However, there was full disclosure here.  The possibility of Lazard receiving a completion fee was fully and completely disclosed upon Lazard's retention and no party, including Appellees, objected.  (Opening Br. at 5.)

In sum, there is no sound reason in law or policy that Lazard should be penalized for accommodating the legitimate requests of the Committee to defer its request for the completion fee component of its market-driven compensation to the end of these cases when its performance and creditor recoveries could be better assessed.

For all of these reasons, and those set forth in the Opening Brief, Lazard and the Committee respectfully request that this Court reverse the Bankruptcy Court Decision and approve Lazard's completion fee.

Dated: New York, New York  
       August 1, 2008

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By:   /s/  Alan W. Kornberg  
Alan W. Kornberg *(akornberg@paulweiss.com)*  
    (A Member of the Firm)

  Philip Barber *(pbarber@paulweiss.com)*  
  1285 Avenue of the Americas  
  New York, New York 10019-6064  
  Telephone: (212) 373-3000  
  Facsimile: (212) 757-3990

Attorneys for Appellant Lazard Frères Co., LLC, Financial Advisor to the Official Committee of Unsecured Creditors

OTTERBOURG, STEINDLER, HOUSTON  
    & ROSEN, P.C.

By:   /s/  Scott L. Hazan  
Scott L. Hazan *(shazan@oshr.com)*  
    (A Member of the Firm)

  John Bougiamas *(jbougiamas@oshr.com)*  
  230 Park Avenue  
  New York, NY 10169-0075  
  Tel: (212) 661-9100  
  Facsimile: (212) 682-6104

Attorneys for Appellant Official Committee of Unsecured Creditors

Filed on behalf of Lazard Frères Co., LLC and the Official Committee of Unsecured Creditors upon consent.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

In re                                                         :   Chapter 11
                                                              :
NORTHWEST AIRLINES CORPORATION,                               :   Case No. 05-17930 (ALG)
et al.,                                                       :
                                                              :   (Jointly Administered)
                                    Debtors.                  :
------------------------------------------------------------- x
LAZARD FRÈRES & CO., LLC,                                     :
                                                              :   District Court
                                    Appellant,                :
v.                                                            :   Case No. 08-CV-03456 (NRB)
                                                              :
DIANA G. ADAMS, United States Trustee;                        :
CARVAL INVESTORS, LLC; and                                    :
ASSOCIATION OF FLIGHT ATTENDANTS –                            :
CWA, AFL-CIO,                                                 :
                                                              :
                                    Appellees.                :
------------------------------------------------------------- x
OFFICIAL COMMITTEE OF UNSECURED                               :
CREDITORS OF NORTHWEST AIRLINES                               :
CORPORATION,                                                  :   District Court
                                                              :
                                    Appellant,                :   Case No. 08-CV-03500 (NRB)
v.                                                            :
                                                              :
DIANA G. ADAMS, United States Trustee;                        :
CARVAL INVESTORS, LLC; and                                    :
ASSOCIATION OF FLIGHT ATTENDANTS –                            :
CWA, AFL-CIO,                                                 :
                                                              :
                                    Appellees.                :
------------------------------------------------------------- x

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2008 I caused copies of the **Joint Reply Brief in Further Support of Appeals from Decision of the Bankruptcy Court Denying Completion Fee Portion of Final Fee Application** to be served on the following:

Brian Shoichi Masumoto
Alicia M. Leonhard
Office of the United States Trustee
33 Whitehall Street, 21st Floor
New York, NY 10004

Allan S. Brilliant
Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018

Hanan B. Kolko
Meyer, Suozzi, English & Klein
1350 Broadway, Suite 501
New York, NY 10018

P. Bradley O'Neill
Kenneth H. Eckstein
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036

Scott L. Hazan
Brett Miller
Otterbourg, Steindler, Houston & Rosen, P.C.
230 Park Avenue
New York, NY 10169

Sean C. Southard
Klestadt & Winters, LLP
292 Madison Avenue, 17th Floor
New York, NY 10017

Robert S. Clayman
Guerrieri, Edmond, Clayman & Bartos
1625 Massachusetts Ave., N.W., Suite 700
Washington, D.C. 20036-2243

   Service on Robert S. Clayman was made by Federal Express. Service on Brian Shoichi Masumoto, Allan S. Brilliant, Hanan B. Kolko, P. Bradley O'Neill, Kenneth H. Eckstein, Scott L. Hazan, Brett Miller and Sean C. Southard was made by hand delivery.

By: *[signature: Lindsay Cohen]*
Lindsay F. Cohen
lcohen@paulweiss.com
Paul, Weiss, Rifkind, Wharton & Garrison, LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone  212.373.3251